EDWARD MORRISON

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa October 31, 1892.*

1. SPECIAL ASSESSMENTS—*confirmation—assessment roll essential to jurisdiction.* Since all the subsequent proceedings in assessment cases are predicated upon the assessment roll, and the judgment of confirmation is based on such roll, or on such roll as modified by the court or verdict of the jury, it follows that the existence of the assessment roll as a part of the record and files of the court is a jurisdictional fact, without which the court has no right or authority to act, or to render a judgment against the property involved in the proceeding.

2. If the assessment roll of the commissioners was in fact filed in the court and was lost from the files, proper steps should have been taken to restore the roll before going into the trial and the entry of judgment of confirmation. It would be error to hear the cause with no assessment roll being on file therein, and also error to permit a supposed copy not on file to be given in evidence as the original assessment roll.

3. Section 26 of article 9 of the act relating to cities and villages, requires the commissioners appointed to make a special assessment to certify the roll to the court appointing them, at least ten days before the first day of the term at which a final hearing thereon shall be had. All the subsequent proceedings are based on such roll or report which the commissioners are to certify and return to the court, and it is essential that the record shall show the return and filing of such roll.

4. A land owner objected to the trial on an application to confirm a special assessment, for the reason there was no assessment roll on file, but the court overruled the objection and permitted a copy of the roll to go in evidence to the jury. It was not shown, as a matter of fact, that an assessment roll had ever been on file, and there was no evidence that the original roll had been lost, mislaid or destroyed, and no order was entered substituting the copy for the original. After appeal by the lot owner, an order of court was entered without notice, and without evidence authorizing the filing of a copy of the roll *nunc pro tunc* as of the date of the trial: *Held,* that the court erred in overruling the objection and in proceeding without the assessment roll.

5. SAME—*proceedings to confirm—changing assessment roll.* It is error, in a proceeding to confirm an assessment of benefits, for the court to permit substantial changes to be made in the roll without having entered any order of record modifying or changing such roll. The owner whose land is sought to be charged has the right to have the

judgment of the commissioners, as well as that of the jury, as to the proportion in which his several parts of the land will be severally benefited by the proposed improvement.

6. An assessment roll described a party's land as the east half of block 7, which was assessed $2951.40, upon which judgment was entered by default for that sum. On motion to set aside the default, a trial was had, pending which a copy of the roll was, by direction of the court, changed, erasing the words "east half" and figures "$2951.40," and substituting the words "east two hundred and one feet, block 7," and the figures "$2078.43," and at the same time $103 was charged against the ten feet of land east of the east half of block 7, and $775.57 charged against the seventy-five feet of land east of said east half of block 7, both of which had been omitted from the copy of the roll. The jury confirmed the assessment, and judgment of confirmation was entered: *Held*, that the judgment was uncertain in respect to the amount charged to the east half of block 7,—whether it was for $2951.40 or $2078.43, or for both,—and was erroneous.

7. In such case, if it be assumed that the land which the commissioners in fact assessed included the two hundred and one feet, the seventy-five feet and the ten feet, all three, yet it does not follow that the special benefits to the three tracts were in proportion to the number of feet contained in them, respectively. The fact may be otherwise, and the owner was entitled, under the law, not only to the verdict of a jury, but also to the judgment of the commissioners, who made a personal examination of the locality, as to the proportion in which the several tracts would be benefited.

8. SAME — *law must be substantially complied with.* In a special assessment for the purpose of opening a street by a city, the object sought to be attained is the imposition of burdens upon the land of the property owner, and in order to do this, there must be at least a substantial conformity to the requirements of the statute.

APPEAL from the Circuit Court of Cook county; the Hon. S. P. McCONNELL, Judge, presiding.

Mr. S. K. Dow, and Mr. JOSIAH BURNHAM, for the appellant.

Mr. C. A. DIBBLE, and Mr. JOHN S. MILLER, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This is an appeal from a judgment of the circuit court of Cook county confirming a special assessment on the property of appellant for extending and opening an alley. The city of

Chicago adopted an ordinance on November 18, 1889, providing for the improvement in question. On December 27 of the same year it filed in said court a petition, praying for the ascertainment of the just compensation to be made for private property to be taken or damaged for the purpose of such alley; and on November 7, 1890, a judgment was entered awarding compensation to each of the owners of property to be thus taken or damaged. On January 16, 1891, the city filed in the condemnation proceeding a supplemental petition for an assessment for the purpose of raising the amount necessary to pay the compensation and damages awarded and the costs of the proceeding, and on the same day an order was entered appointing commissioners to make an assessment.

Section 26 of article 9 of the act for the incorporation of cities and villages makes the following provision in regard to commissioners appointed to assess benefits: "They shall also make, or cause to be made, an assessment roll, in which shall appear the names of the owners, so far as known, a description of each lot, block, tract or parcel of land, and the amount assessed as special benefits thereto, and in which they shall set down, as against the city or village, the amount they shall have found as public benefit, and certify such assessment roll to the court by which they were appointed, at least ten days before the first day of the term at which a final hearing thereon shall be had." All the subsequent proceedings provided for in the statute are based on this assessment roll or report which the commissioners are to certify and return to the court, and, as appears from the section just quoted, it is required to be filed in the court "at least ten days before the first day of the term at which a final hearing thereon shall be had." In the record before us it does not appear that any assessment roll whatever, made or caused to be made by the commissioners, or certified by them, was filed in the court at any time, and if it should be assumed that one was filed, it is wholly uncertain whether it was filed on the 6th day of February, 1891, or on

the 14th day of February, 1891. The clerk states in the transcript of the record that "heretofore, to-wit, on the 14th day of February, A. D. 1891, there was filed in said court a certain assessment roll, (which file mark has been erased by lines drawn across it in ink,) which is in the words and figures following, to-wit," and the assessment roll which follows is marked upon its face "copy." It is identified as the instrument in regard to which, as is shown by the bill of exceptions, the following proceedings took place in the court on the 7th day of March, 1891, to-wit: "And the counsel for the petitioner having stated to the court that said assessment roll was delivered to the clerk for filing on the 14th day of February, 1891, and simultaneously with the affidavit of commissioners which is marked filed as of that day, leave was granted to file said assessment roll *nunc pro tunc* as of the 14th day of February, 1891, and the said paper was so filed." · And it further appears from the bill of exceptions, that afterwards, but on the same day, counsel for the city stated in open court that the said paper which had been filed *nunc pro tunc* as of the 14th day of February, 1891, was a copy of the assessment roll, and not the original, and that the original assessment roll had been found and bore the file mark of the 6th day of February, 1891, and that on his motion the said paper so filed as an assessment roll *nunc pro tunc* as of the 14th day of February, 1891, was stricken from the files and the file mark thereon stricken out.

It does not appear from the record, otherwise than is hereafter stated, that the original assessment roll was ever filed in the court, or that either it or a copy thereof was filed on February 6, 1891. On April 26, 1891, the court, on motion of appellant, entered an order that the petitioner be required to return to the files the assessment roll filed in the cause, but it does not appear that such order was ever complied with. On the contrary, on the 13th day of May, 1891, a jury having been impaneled to try the issues, counsel for appellant

called the attention of the court to the fact that there was no assessment roll on file, but the court overruled the objection interposed in that behalf, and, over the objection and exception of appellant, permitted the "copy" above mentioned to go in evidence as the original roll, for the purpose of establishing a *prima facie* case for appellee. No witness stated that an assessment roll had, as matter of fact, ever been on file in the proceeding, and there was no evidence whatever that the original assessment roll had been lost, mislaid or destroyed, and there was no order entered by the court which substituted said "copy" in the place and stead of the original, as the assessment roll returned by the commissioners.

This appeal herein was perfected by the filing of an appeal bond on the 9th day of July, 1891, and thereafter, on August 29, 1891, the circuit court made the following order: "Now comes the city of Chicago, by its attorney, and showing to the court that the assessment roll filed herein on February 6, A. D. 1891, has been lost or mislaid, moves to supply the files by filing a copy, in substance, of the assessment roll filed herein on February 6, A. D. 1891, and that the same be filed *nunc pro tunc* as of February 6, A. D. 1891, and the court being fully advised in the premises, it is ordered that the files be supplied by the filing of a substantial copy of the assessment roll filed herein on February 6, A. D. 1891, and that the copy be filed *nunc pro tunc* as of February 6, A. D. 1891." It is stipulated by counsel that as matter of fact said order of August 29 was entered without the knowledge of the counsel for appellant, that no notice of the application for said order was given to appellant or his counsel, and that no affidavit was filed in support of said application.

It is manifest from the record that at the time of the submission of the case to the jury, and at the several times that the other proceedings in the cause were had in the court, and at the time of the rendition of the judgment, there was no assessment roll on file in the court. It is not deducible from

the record, as a fact, that any assessment roll was ever filed in the court, other than the copy of an assessment roll that on March 7, 1891, was filed *nunc pro tunc*, and a few hours thereafter stricken from the files by order of the court. The record seems to indicate that either the original assessment roll was never lodged in the court, or, if returned there, was not filed until the 14th day of February, 1891, and was then delivered to the clerk for filing, "simultaneously with the affidavit of commissioners which is marked filed as of that day," and was afterwards withdrawn from the files by some one, probably for the reason it would show by the file mark upon it that it was not certified to the court ten days before the first day of the term, so as to justify the judgment of confirmation by default that was rendered against the property of appellant on February 19, 1891.

Since all the subsequent proceedings in special assessment cases are predicated upon the assessment roll, and the judgment of confirmation is based on said roll, or on said roll as modified by the court or verdict of the jury, it follows that the existence of the assessment roll as a part of the record and files of the court is a jurisdictional fact, without which the court has no right or authority to act, or to render a judgment against the property involved in the proceeding. If the assessment roll was in fact filed in the court and was lost from the files, then proper legal steps should have been taken to restore the lost paper. The assignments of error that the court erred in entertaining and trying the cause with no assessment roll on file in the cause, that it erred in not requiring appellee to supply the missing assessment roll, and that it erred in permitting a supposed copy which was not on file in the cause to be given in evidence as the original assessment roll, are well assigned.

It appears that the real estate of appellant affected by the assessment is the east half of a certain block 7; that on February 19, 1891, the court rendered a final judgment by default

against said property, confirming a special assessment upon it of $2951.40, and ordering it to be certified to the city collector; that several days thereafter appellant made application to the court to set aside the default and judgment of confirmation, which was denied, but the court directed that the default and confirmation should stand, with leave to appellant to have a trial in the cause, the said default and confirmation to abide the result of such trial. It also appears that the copy of assessment roll which was admitted in evidence, as is above herein stated, described the property of appellant as "E. ½ block 7," etc., and indicated an assessment thereon of $2957.40, but did not designate the number of feet of land in said east half of block 7; that pending the trial before the jury said copy of the assessment roll was, by direction of the court, changed, the words and figures "E. ½" and the figures "$2957.40" being erased, and the words and figures "east 201 ft. block 7" and the figures "2078.43" being substituted for them; that at the same time $103.40 was charged as being assessed against the ten feet of land east of the east half of block 7, and $775.57 charged as being assessed against the seventy-five feet of land east of said east half of block 7, and that both said ten feet and said seventy-five feet had been omitted from said copy of assessment roll. Thereafter the jury returned a verdict as follows: "We, the jury, find the issues for the petitioner, and sustain the assessment as made"; and the court then rendered a judgment "that the said assessment, and all proceedings therein, be and the same are hereby confirmed, and that the clerk of this court certify the assessment roll as to the property of said objector E. W. Morrison, returned by said commissioners, together with this judgment, to the collector of the city of Chicago, as required by law."

It thus seems to be a matter of uncertainty whether the judgment of the court confirmed an assessment on appellant's land, the east half of block 7, which contains two hundred and one feet, of $2957.40, supposed to have been returned by the

commissioners, or confirmed the assessment of $2078.43 on said east half that was made to appear against it by the changes that were made during the trial on the copy of the assessment roll which was in evidence. If we assume the verdict and judgment were based on a lost or mislaid original assessment roll which had been filed, then, plainly, the judgment confirmed an assessment of $2957.40 on said east half. But it was probably intended by both court and jury that the amount which should be confirmed as a special assessment on appellant's land was $2078.43. This, however, is mere matter of inference.

The statute provides that the court shall have authority to modify, alter, change, annul or confirm any assessment. But here the court made no order modifying, altering or changing the assessment, did not even make, or authorize to be made, any modification, alteration or change in any assessment roll, report or paper which was a record or file of the court, but merely gave verbal authority to counsel to make changes in a loose paper which had been admitted in evidence but was not a part of the files of the court. The judgments of courts of record should not stand upon so uncertain a footing as to what they are. But assuming the judgment of May 23, 1891, should be regarded as the confirmation of an assessmen of $2078.43 on the land of appellant, how does the matter then stand? The court had already entered a final judgment on February 19, 1891, in this special assessment proceeding, confirming an assessment of $2957.40 on this land. It is generally understood that there is room for but one final judgment, disposing of the whole matter in controversy. The court did not, in its judgment of May 23, or at any other time, make any order which assumed to set aside or vacate or modify the judgment of February 19. Are both judgments in force, and burdens on appellant's property, or is only one of them in force? If so, which of them? And if that of May 23, what is the amount of the assessment that it confirms?

And if in compliance with the permission given by the subsequent order of August 29, 1891, a substantial copy of the assessment roll as certified by the commissioners was filed, (and it does not appear from the record whether it was or not,) then which amount is to be held to be confirmed by the judgment of May 23 as a special assessment on the land,— the $2957.40 specified in such supplied record, or the $2078.43 that appears interlined on the loose paper not on file?

If the copy of the assessment roll which was offered in evidence may be regarded as the assessment roll that the statute requires the commissioners to certify to the court, then it was error to permit such substantial changes to be made as were made therein without entering any order of record modifying or changing said assessment roll; and we also think it was error to arbitrarily apportion an assessment, as was done in this case, for even if it be assumed that the land which the commissioners in fact assessed included the two hundred and one feet, the seventy-five feet and the ten feet, all three, yet it does not follow, as a matter of course, that the special benefits to the three pieces of land were in proportion to the number of feet contained in them, respectively. The fact may be far otherwise, and appellant was entitled, under the law, not only to the verdict of a jury, but also to the judgment of three sworn commissioners, who had made personal examinations of the locality, as to the proportion in which said three portions of land would be severally benefited by the opening of the alley.

We likewise think it was error to render a second final judgment in the cause against the real estate of appellant without vacating or modifying the former final judgment therein against said land.

Numerous other objections to the proceedings in the circuit court are raised by the assignments of error, but there does not seem to be any necessity for considering them.

In a special assessment proceeding such as this, the object sought to be attained is the imposition of burdens upon the land of the citizen and property owner. In order lawfully to do this there must be at least a substantial conformity to the requirements of the statute. Here, very plainly, there was not a substantial compliance with its requirements. If in such a proceeding, the mandates of the statute are ignored, and the principles and the rules of practice which govern the procedure of the courts in the transaction of business are disregarded, there is great danger that injustice will be done and private rights violated.

The judgments of confirmation entered herein, so far as they relate to the land of appellant, are reversed. The cause is remanded to the circuit court. Appellee can there take such further steps in the premises as shall be conformable to law and as to it shall seem meet and proper.

*Judgment reversed.*