The Connecticut Mutual Life Insurance Company

*v.*

The City of Chicago.

*Opinion filed October 24, 1905.*

1. Special assessments—*when description is sufficient.* A description in a special assessment ordinance, of catch-basin covers of a certain weight and "of the same size and pattern as those used in new work in the city of Chicago during the year 1902," is sufficient. (*Lanphere* v. *City of Chicago,* 212 Ill. 440, followed.)

2. Same—*when the engineer's estimate is sufficiently itemized.* The engineer's estimate of the cost of a local improvement to be paid for by special assessment is sufficiently itemized if it gives the property owners a general idea of the estimated cost of the substantial, component elements of the improvement.

3. Same—*when ordinance sufficiently fixes grade.* An ordinance which, by proper reference, fixes the grade for setting the curb at each of the streets intersecting the street to be improved is not defective in failing to fix the grade at points between such intersections, since the grade at intermediate points is a line drawn from one intersection grade to the next one.

4. SAME—*court may correct description in an assessment roll.*
Under sections 47, 48 and 52 of the Local Improvement act of
1897, if it is proved that the subdivision by which certain lots were
assessed has been annulled by a court of chancery, the county
court may change the description in the roll from lots and blocks
to acre property, and its action in confirming the original assess-
ment under the new description cannot be complained of, where no
motion was made to re-refer the roll for re-casting the assessment
and no objection was made that the assessment was excessive.

APPEAL from the County Court of Cook county; the
Hon. W. H. HINEBAUGH, Judge, presiding.

LOUIS M. GREELEY, for appellant.

ROBERT REDFIELD, and FRANK JOHNSTON, Jr., (EDGAR
B. TOLMAN, Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an application in the county court of Cook
county for the confirmation of a special assessment to defray
the cost of improving West Fiftieth street from South Mor-
gan street to South Ashland avenue, in the city of Chicago.
The appellant appeared and filed objections to the confir-
mation of the assessment as to its property, which were
overruled and the assessment was confirmed, and it has
prosecuted an appeal to this court.

It is first contended that the catch-basin covers provided
for by the ordinance to be put in as a part of the improve-
ment are not sufficiently described. The ordinance, after
providing for four new catch-basins, proceeds as follows:
"Each of said catch-basins shall be provided with a cast-
iron cover, with a projecting lip to receive the water from
the gutters, each of which covers shall weigh four hundred
and seventy pounds, and shall be of the same size and pat-
tern as those used in new work by the city of Chicago during
the year 1902." The question here raised was considered in
the case of *Lanphere* v. *City of Chicago,* 212 Ill. 440, and

217—23

there decided adversely to the contention of the appellant. Under the authority of that case the description of the catch-basin covers found in the ordinance was sufficient.

It is next contended the estimate of the engineer of the cost of the improvement was not sufficiently itemized. It was in the following form:

"Sandstone curb-stones on limestone blocks, 7720 lineal
    feet at 75c.......................................... $5,790.00
Paving with eight inches of blast furnace slag, three
    inches of limestone and three inches of granite,
    bonded with gravel, one-half inch of granite screen-
    ings, 17,170 square yards at $1.50.................. 25,755.00
Adjustment of sewers, catch-basins and man-holes and
    constructing four new catch-basins................ 1,455.00

    Total.......................................... $33,000.00

The estimate of the cost of the improvement made by the engineer, found in the record and incorporated in the opinion in *Hulbert* v. *City of Chicago,* 213 Ill. 452, was substantially in the same form as the engineer's estimate in this case, and the estimate was there held to be sufficient. What was said on that subject in that case was referred to with approval in *Clark* v. *City of Chicago,* 214 Ill. 318. The engineer's estimate, as itemized by him, was sufficiently specific to give the property owner a general idea of what it was estimated the substantial, component elements of the improvement would cost. That was a substantial compliance with the statute, and sufficient. *Hulbert* v. *City of Chicago, supra; Clark* v. *City of Chicago, supra.*

It is further contended that the ordinance is insufficient on the ground that it does not sufficiently establish the grade of the street, as it is said it establishes the grade at the intersecting streets but not at the intermediate points between the intersections. The ordinance, after providing for the setting of curb-stones on each side of the roadway, is as follows: "Said curb-stone shall be set so that the top edge of the same shall coincide with the grade of said West Fiftieth street between said points, (the east line of South Morgan street and

the east curb line of South Ashland avenue,) which grade is hereby established as follows, to-wit: Intersection of South Ashland avenue, 15.0 feet above datum; at a line parallel with and 121 feet east of the east line of South Ashland avenue, 14.5 feet above datum; intersection of Justine street, 13.5 feet above datum; intersection of Laflin street, 13.5 feet above datum; intersection of Bishop street, 13.5 feet above datum. ·* * * The above heights, as fixed, shall be measured from the plane of low water in Lake Michigan of A. D. 1847, as established by the trustees of the Illinois and Michigan canal and adopted by the late board of drainage commissioners and by the late board of public works of the city of Chicago, and now represented by the ordinance of July 11, A. D. 1898, relating to the corrected elevation of the old Lind block bench-mark, which determines the base or datum for city levels." Counsel for appellant insists that the ordinance establishes the grade of Fiftieth street only at the intersection of cross-streets. We do not think that the ordinance is defective in this respect. The actual construction to be placed upon its language is, that the grades at the intermediate points will be a line drawn from the grade fixed at one intersection to the grade fixed at another intersection. The ordinance must be viewed as a whole, and one part or section may be referred to for the purpose of explaining another part or section. (*McChesney* v. *City of Chicago,* 173 Ill. 75.) It is not necessary to set out the details of the grade of every street which is to be improved by special assessment or special taxation. "A reference to an ordinance, monument, instrument or other fixed thing that locates and witnesses that grade will suffice." (*City of Carlinville* v. *McClure,* 156 Ill. 492.) While it is true that the street grade can only be established by an ordinance of the city, "reference to the established grade of a street to be improved, which has been established by another ordinance, is a sufficient specification of the grade." (*Craig* v. *People,* 193 Ill. 199; *Claflin* v. *City of Chicago,* 178 id.

549.) The ordinance here under consideration contains such a reference to the established grade as is above referred to.

It is also urged on behalf of the appellant that the estimate of the cost of the improvement made by the engineer was illegal in including what are called the May street and Carpenter street "returns." It appeared upon the trial, from a decree entered in a burnt records suit, offered in evidence, that May and Carpenter streets, as shown upon the plat of Windett's addition, where appellant's property was located, were closed from Fiftieth street north, by such decree. Appellant called one Green, an assistant city engineer, and proposed to prove by him that he made the computations and figures for the establishment of the cost, and that such estimate included the cost of curbing the street "returns" of both May and Carpenter streets. The estimate of cost introduced in evidence was made and signed by C. D. Hill, engineer of the board of local improvements. Whether or not the trial court erred in excluding the proposed evidence of the witness Green upon this subject, it is sufficient to say that Green did testify that he did not know whether Hill, the engineer who made the estimate, included the cost of curbing and paving said street "returns" or not. There does not appear to be in the record any evidence that the estimate included items not provided for in the ordinance. The objection is therefore without force.

It is also objected that the trial court erred in re-casting the assessment roll by striking out the lot and block descriptions and assessing the aggregate of the lot and block assessment against the unsubdivided tract. By the original assessment roll as returned into court by the superintendent of special assessments the property of appellant was assessed as certain lots and parts of lots in certain blocks and parts of certain blocks in Windett's addition to Chicago. In support of its objection to this mode of assessing its property the appellant introduced in evidence the proceedings and decree rendered in said burnt records proceedings for the purpose

of establishing its title. By the decree in that suit, Windett's addition to Chicago, being a subdivision of the south half of the north-west quarter of the north-east quarter and the north half of the south-west quarter of the north-east quarter of section 8, township 38, north, range 14, east of the third principal meridian, was declared to be null and void and a cloud upon appellant's title. After it was thus proved that Windett's subdivision had been set aside as null and void the court entered an order re-casting the assessment roll, and changed the description of the property of appellant as being certain lots and parts of lots and blocks in Windett's subdivision to a description of the same which was its description as unsubdivided property, and the property of the appellant which had been assessed as about fifty-six separate pieces of property in a subdivision by the original assessment roll, was re-assessed by the court as a ten-acre tract, described as the south half of the north half of the south-west quarter of the north-east quarter of section 8, etc. The amount assessed upon this ten-acre tract, to-wit, $5364.70, was the same as the aggregate of all the amounts assessed against the different lots and parts of lots described in the original assessment roll. The contention of the appellant is, that the court should have referred the roll back to the officer who made it, with directions to him to revise the assessment as he might deem proper, in view of the changed description. It is said that if this had been done the amount of the assessment upon the tract may not have been the same as the aggregate amount of the sums assessed against the lots and blocks.

In support of this position upon this branch of the case appellant refers to the case of *Morrison* v. *City of Chicago,* 142 Ill. 660. That case, however, was decided before the present Local Improvement law was passed. Section 47 of the act of 1897, concerning local improvements, provides that, upon objection or motion for that purpose, the court may inquire "whether or not the assessment, as made and returned, is an equitable and just distribution of the cost of

said improvement, first, between the public and the property; and second, among the parcels of property assessed. The court shall have the power, on such application being made, to revise and correct the assessment levied, to change or modify the distribution of the total cost between the public and property benefited, and also to change the manner of distribution among the parcels of private property, so as to produce a just and equitable assessment. * * * The court may either make such corrections or changes, or determine in general the manner in which the same shall be made, and refer the assessment roll to the person filing the same for revision and correction." (Hurd's Stat. 1903, p. 402.) Section 48 of the same act provides that upon hearing of legal objections "the court shall determine all questions relating to the sufficiency of the proceedings, the distribution of the cost of the improvement between the public and the property, and of the benefits between the different parcels of property assessed, * * * and shall thereupon enter an order in accordance with the conclusions it shall reach." Section 52 of the act also provides that the court "shall have authority to modify, alter, change, annul or confirm any assessment returned as aforesaid, in addition to the authority already conferred upon it."

Counsel for appellee insist that under these provisions of the Local Improvement act the court had the power to change the description of the property assessed in the manner already stated, there being no change in the amount of the assessment, the only difference being that the total amount was by the court assessed against one tract, whereas the original assessment roll apportioned that amount among different pieces of property. The appellant did not ask the court to re-refer the assessment roll, and the objection was not made that the assessment was excessive, but the only objection urged in the trial court was that the description of the property had been improperly changed by the court. We think it clear from the sections of the Local Improve-

ment act hereinbefore set out, that the court had the right
to change the description of the property of appellant so that
in the original assessment roll, as finally confirmed, its prop-
erty should be correctly described, and that the appellant
having failed to ask the court to re-refer the roll to the su-
perintendent to re-cast the assessment, and having failed to
raise the question in the trial court that its property was as-
sessed for too large an amount, the court did not err in cor-
recting said description so that the property of the appellant
might be correctly described, and, after such correction, con-
firming the assessment.

Finding no reversible error in this record the judgment
of the county court will be affirmed.

*Judgment affirmed.*