THE CITY OF CHICAGO, Appellant, *vs.* ARTHUR L. FARWELL, Appellee.

*Opinion filed December 17, 1913.*

1. SPECIAL ASSESSMENTS—*court may dismiss petition although assessment roll is not on file.* A motion to dismiss a special assessment petition for want of jurisdiction in the court to take any action may be made at any time, and it is not necessary that the commissioners' report and the assessment roll be on file before the court can enter an order dismissing the petition.

2. SAME—*the Local Improvement act contemplates separate appeals.* The Local Improvement act declares that the judgment shall have the effect of several judgments as to each tract of land assessed and contemplates separate appeals, and that the proceedings shall not be delayed because all persons who are or may be interested in the questions involved on the appeal, though not in the property involved, are not in court to participate in the argument of the questions.

3. SAME—*when assignment of cross-errors is unnecessary.* An assignment of error, on appeal by the city, that the court erred in dismissing a special assessment petition raises the question of the validity of each of the reasons urged in the motion to dismiss and no assignment of cross-errors is necessary, but if any one of the various reasons assigned for dismissing the petition is sufficient, that fact completely answers the assignment of error.

4. SAME—*private property to be taken for local improvement must be described.* Sections 7 and 8 of the Local Improvement

act require the resolution of the board of local improvements and the ordinance, whenever private property must be taken or damaged for the proposed improvement, to describe the property proposed to be taken.

5. SAME—*commissioners have no authority to change description of property to be taken.* The ordinance describing the property to be taken or damaged for a proposed local improvement is the guide for the commissioners appointed to assess the compensation to be made to the owners, and they have no discretion to omit any part of the property described in the ordinance nor to include any property omitted.

6. SAME—*when ordinance for special assessment is void.* An ordinance for a special assessment which omits some of the property proposed to be taken or damaged for the proposed improvement, and which includes property which is not within the limits of such improvement, is void.

7. SAME—*when the Supreme Court should not decide important questions not necessarily involved.* Important legal questions affecting large interests and the rights of many persons who are vitally interested in such questions but who have not had an opportunity to argue them should not be decided by the Supreme Court on appeal from a judgment dismissing a petition for a special assessment and the condemnation of private property to be taken or damaged for the proposed improvement, where the decision of such questions is not necessarily involved in the decision of the case presented by the appeal.

APPEAL from the County Court of Cook county; the Hon. JOHN E. OWENS, Judge, presiding.

WILLIAM H. SEXTON, Corporation Counsel, PHILIP J. McKENNA, and EUGENE H. DUPEE, (EDGAR B. TOLMAN, ROBERT REDFIELD, and HENRY P. CHANDLER, of counsel,) for appellant.

CHURCH, SHEPARD & DAY, (FRANK L. SHEPARD, of counsel,) for appellee.

MAYER, MEYER, AUSTRIAN & PLATT, for intervenor W. F. McLaughlin & Co.; GEORGE A. MASON, and GEORGE PACKARD, for intervenors Caroline Howe Packard and Mary Howe Straus.

Mr. JUSTICE DUNN delivered the opinion of the court:

The city of Chicago filed a petition in the county court of Cook county praying that a special assessment might be levied upon property which would be benefited by the construction of a street improvement in accordance with the provisions of an ordinance therefor attached to the petition, and for the ascertainment of the just compensation to be made for private property to be taken or damaged for such improvement. The petition described certain parcels of land which it was averred would be taken or damaged for the improvement, and Arthur L. Farwell, who was the owner of a part of the land so described, entered a motion to dismiss the petition for the reason that the improvement described in the ordinance is not a local improvement; that it is not a single improvement; that the ordinance is void because it includes both the construction of the improvement and the condemnation of land therefor; and that the ordinance is void because it fails to describe and provide for the condemnation of land shown to be necessary for the making of the improvement and does describe and provide for the condemnation of land which is shown not to be necessary for or connected with the improvement. The court held the first three reasons insufficient but the fourth valid, and for that reason sustained the motion and dismissed the petition. The city appealed, and has assigned for error the dismissal of the petition for the reason of the defective descriptions. The appellee has assigned cross-errors on the overruling of the other three reasons.

The proposed improvement includes Michigan avenue from Randolph street north to the Chicago river and Pine street and Lincoln parkway from the southern terminus of Pine street north to Chicago avenue, and contemplates the extension of Pine street south to the river, a distance of about 120 feet, and the construction of a bridge over the river to connect Michigan avenue with this extension of Pine street. The distance from Randolph street to Chi-

cago avenue is nearly a mile, and there are a great many tracts of land abutting on·or in the vicinity of the proposed improvement which may be liable to assessment in this proceeding. No assessment roll has yet been filed and no commissioners have been appointed upon the city's petition.

W. F. McLaughlin & Co., a corporation, and Caroline Howe Packard and Mary Howe Straus, owners of real estate abutting on the proposed improvement which may be assessed though no order has yet been made in regard thereto and though the petition is still pending in the county court as to their property, were granted leave to intervene and file briefs in the cause. They have accordingly filed briefs, which are largely devoted to the proposition that the appeal should be dismissed or at least the court should not pass upon the cross-errors. The grounds upon which it is urged that the appeal should be dismissed are, that the record does not present an agreed case within the meaning of rule 22 of the rules of this court or of sections 103, 104 and 105 of the Practice act, and that no commissioners' report and assessment roll were on file when the motion was made and the court dismissed the petition. The case is not, and does not purport to be, an agreed case under the statute, and therefore the rule and the sections of the statute cited have no application. In support of their contention that the commissioners' report and assessment roll are necessary before the court can make an order dismissing the petition, counsel cite the case of *Morrison* v. *City of Chicago,* 142 Ill. 660. That case, however, decided only· that the court could not confirm an assessment until the assessment roll had been filed. In the case of *Village of Hammond* v. *Leavitt,* 181 Ill. 416, it was decided that a motion to dismiss the petition for want of jurisdiction in the court to take any action may be made at any time. Whenever it appears that the city council had no authority to pass the ordinance which is the foundation of the proceedings, whether from the face of the petition or other-

wise, the county court is justified in dismissing the proceedings because, the ordinance being void, it has no jurisdiction to entertain the petition. Section 56 of the Local Improvement act declares that judgments of condemnation shall have the effect of several judgments as to each tract or parcel of land assessed, and that no appeal shall invalidate or delay the judgments except as to the property concerning which it is taken. Thus it appears that separate appeals are contemplated, and that the proceedings are not to be delayed because all persons who are or may be interested in the questions involved, though not in the property involved, are not in court to participate in the argument of the questions.

Errors may be assigned on the judgment of the court but not on the reasons for its judgment. The judgment of the court dismissed the petition on the appellee's motion. The appellant assigned as error that the court erred in dismissing the petition. This raised the question of the validity of each of the reasons urged for the dismissal and no assignment of cross-errors was necessary. If any of the four reasons assigned in the motion for the dismissal of the petition was sufficient that fact completely answered the assignment of error.

The motion was heard upon the petition, together with the recommendation of the board of local improvements, the engineer's estimate, the ordinance, a stipulation of facts and the testimony of one witness, (a real estate expert,) who gave his opinion as to the effect of the improvement on the value of real estate abutting on and in the vicinity of the improvement, and of real estate, generally, in the city. The record shows that Michigan avenue is a north and south street extending south from the Chicago river to Sixty-third street, being under the jurisdiction of the city north of Randolph street and south of Garfield boulevard or Fifty-fifth street and of the South Park Commissioners between those streets. The avenue has a width of 66 feet

north of Randolph street, 127½ feet from Randolph street
to Madison, 130 feet from Madison street to Twelfth and
100 feet south of Twelfth street. North of Randolph street
it has an old granite-block pavement re-surfaced with as-
phalt. From Randolph street to Garfield boulevard the
pavement is asphaltic, and Michigan avenue, in connection
with Garfield boulevard, forms the main thoroughfare for
automobiles and pleasure vehicles between the central busi-
ness district and the south side of the city. It is also in-
tersected by other boulevards of the South Park system,
and by means of Jackson boulevard is connected with the
parks and boulevards under the control of the West Chi-
cago Park Commissioners on the west side of the city.

Beginning at North Water street about 120 feet north
of the Chicago river, with its center line about 200 feet
east of Michigan avenue, a street runs north to Chicago
avenue which is called Pine street south of Ohio street and
Lincoln parkway north of Ohio street. This street extends
still further north, and from Chicago avenue is a boule-
vard under the jurisdiction of the Lincoln Park Commis-
sioners. At Oak street its name again changes to Lake
Shore Drive, which, entering at North avenue, extends
through Lincoln Park and joins Sheridan road, which ex-
tends north for many miles along Lake Michigan. The
Lake Shore Drive south of North avenue is the main ap-
proach to the central district of the city for pleasure and
automobile traffic from the north. A strip of private prop-
erty separates the south end of Pine street from the Chi-
cago river, which is there about 300 feet wide. Between
the junction of the north and south branches of the river
west of Wells street and the lake,—a distance of about
three-quarters of a mile,—are five bridges connecting the
north and south divisions of the city, located, respectively,
beginning at the west, at Wells street, Clark street, Dear-
born street, State street and Rush street. The government
of the United States has issued a permit for the construc-

tion of the proposed bridge, which provides that the Rush street bridge shall be removed within six months after the new bridge is opened for traffic.

The ordinance contemplates the construction of a continuous thoroughfare from Randolph street to Chicago avenue having two levels, the grades of Pine street and Michigan avenue gradually rising on the upper level from Ohio and Randolph streets, respectively, toward the river, and the lower level continuing under the upper level from Lake street to Indiana street. The grades of Lake street and Ohio street will be raised to connect with the upper level and those of the intermediate intersecting streets and alleys will be lowered to connect with the lower level. The upper level will be supported on an elevated structure of steel and concrete, and the two levels will be carried across the river on a bascule bridge having two decks corresponding with the two levels of the thoroughfare. It is proposed to widen Michigan avenue by adding 62½ feet on the east side and Pine street and Lincoln parkway by adding 75 feet on the west, and each level will extend the whole width of the street. The total estimated cost of the improvement, not including the land to be taken, is $2,298,247. The ordinance provided that the cost of the improvement should be paid for by special assessment, except the cost of those parts which were contained in certain sections of the estimate, amounting to $1,028,118, those parts being the cost of the bridge and the structures connected with it.

East of Michigan avenue and north of Randolph street are the suburban and freight depots of the Illinois Central and Michigan Central Railroad Companies and their yards, occupying about eighty-six acres, and which contain team tracks, driveways, freight stations, docks and slips for the receipt and discharge of freight. This tract is bounded on the west by Beaubien court,—a short street extending from Randolph street to South Water street. From Beaubien court west to State street and from Randolph street to the

river the property is occupied for the most part by wholesale warehouses and salesrooms. On South Water street are produce commission stores and on the river steamship docks. On State street and Randolph street are retail stores, with warerooms and offices on the upper floors. North of the river the property on State street to Chicago avenue is occupied by retail stores on the first floors with residences above. The next street east (Cass) is improved with old dwellings occupied as residences. Rush street is occupied by retail stores on the first floors with dwellings above, to Ohio street, where there are three family hotels, and north of Ohio street it is occupied by private residences. Along Pine street are old dwellings occupied as rooming houses to Indiana street, and north of Indiana street private residences and apartment buildings. St. Clair, the next street east, is occupied by private dwellings and apartment buildings. The east and west streets are improved with buildings used for residence purposes. Lincoln parkway and Lake Shore Drive are improved with high-class dwellings and apartments. East of St. Clair street and north of the Chicago river is a manufacturing district occupied by large factories and warehouses, some of which have railroad connections, slips and docks. Michigan avenue from Randolph street south to Twelfth street is bounded on the east by Grant Park and improved on the west with high-class office buildings, clubs and hotels. Between Twelfth street and Thirty-first street it is occupied chiefly by automobile warehouses and salesrooms, and from Thirty-first street to Garfield boulevard by high-class private residences and apartments.

Michigan avenue between Randolph street and the Chicago river is traversed by a great number of automobiles and vehicles moving north and south between the center of the city and the north side, the volume of this traffic being especially great at the beginning and the end of the business day. On the east and west streets there are streams

of traffic of great volume to and from the freight yards
and docks east of Michigan avenue. It is necessary for
crossing policemen at intervals to halt north and south-
bound vehicles to permit east and west-bound vehicles to
proceed, and *vice versa*. The north-bound traffic crosses
the river over the Rush street bridge and proceeds north
along Rush street and then east to the manufacturing dis-
trict or north on Pine street and Lincoln avenue to Chicago
avenue. The return traffic proceeds in the reverse direc-
tion and crosses Rush street bridge. The volume of this
traffic is very great. On the east and west streets north of
the river there are streams of traffic crossing Rush street
and Pine street, going to the manufacturing district east
of Pine street.

The result of the large amount of vehicle traffic in the
district in which the improvement is proposed, the heavy
vehicles moving both north and south and east and west
over intersecting streets to and from the freight yards,
docks, factories and warehouses east of the improvement,
and the automobiles and light vehicles in great numbers
traversing the district north and south between the north
side and the central part of Chicago, is to create a great
congestion of traffic, which is much greater because of the
narrowness of Michigan avenue and the fact that there is
no direct connection between Michigan avenue and Pine
street but that all the north and south traffic must go over
the narrow Rush street bridge west of both Michigan ave-
nue and Pine street. The proposed improvement will make
of Michigan avenue, Pine street and Lincoln parkway prac-
tically a straight, wide thoroughfare connecting the center
of the city with the north side, the upper roadway being
devoted mainly, or probably altogether, to the use of auto-
mobiles and light vehicles, which will have a clear track
with no intersecting streets, while the lower level will be
devoted to the heavy traffic and will be relieved of the
presence of the lighter vehicles.

It is stipulated that the ordinance, in describing the property necessary for the purpose of the construction of the improvement and directing its acquisition by condemnation, omits certain lots and parts of lots within the limits of the proposed improvement and necessary for its construction and includes certain lots and parts of lots not within the limits of the proposed improvement and not necessary for its construction. Sections 7 and 8 of the Local Improvement act require the resolution of the board of local improvements and the ordinance, whenever private property must be taken or damaged for the proposed improvement, to describe the property proposed to be taken for that purpose. Section 1 of the ordinance describes the location of the improvement and fixes the west line of the improvement north of the Chicago river 141 feet west of the east line of Pine street and Lincoln parkway. The ordinance then provides that for the construction of the improvement "the following lots, blocks, tracts and parcels of land, all of which are necessary for said purpose, shall be acquired by condemnation," followed by a description of the property to be taken, in which occur the errors above referred to. It is argued that from the description of the improvement the lots and parts of lots necessary are readily ascertainable and that the errors of description can thus be corrected by the ordinance itself. But this is not what the statute contemplates. It requires that the ordinance shall prescribe the nature, character, locality and description of the improvement. If private property is to be taken it requires also a description of that property with reasonable certainty. It is the guide and authority of the commissioners appointed to assess the compensation to be made to the owners. They have no discretion to omit any part of the property described or to include any property omitted. In two of the cases of misdescription here, the error consisted in locating the property to be taken by a

perfectly plain, unambiguous and otherwise correct legal description in the wrong block, which was outside the limits of the improvement. The commissioners would have no right to omit these lots from their report and include others which they might think were intended. The ordinance not describing the private property to be taken for the improvement was void and the motion to dismiss the petition was therefore properly sustained.

The appellant's counsel have argued that the judgment cannot be sustained on either of the other grounds assigned in the motion to dismiss, and the appellee's counsel have argued that each of those grounds is sufficient to sustain the judgment. This petition was filed in the county court on September 11, 1913. On the same day the appellee entered his appearance, made his motion to dismiss the petition, the motion was argued and decided and an appeal was taken. The case was submitted at the October term and the parties have expedited it as rapidly as possible. The city is desirous of a decision of the other questions in the case. It is evident, however, that there is a large number of owners of property of great value which may be assessed large sums for benefits if this proceeding is carried through successfully by the city. Their interest in these questions is equal to that of the appellant. So far as the controversy on this appeal is concerned it is disposed of, and the court ought not to undertake to decide important legal questions affecting large interests and many persons when such questions are not necessarily involved in the case before us and where those vitally interested on one side have not had an opportunity to argue those questions.

*Judgment affirmed.*