ALFRED M. KVELLO et al. v. CITY OF LISBON et al.

(164 N. W. 305.)

City council — plans — specifications — estimates — for special assessments — levy of — for city improvements — findings and declarations of council — prerequisite — mandatory.

1. A finding and declaration by the city council which is based upon and refers intelligently to the plans, specifications, and estimates, is a prerequisite to the levying of a special assessment for the erection of a standpipe, under the provisions of article 20 of chapter 44 of the Compiled Laws of 1913. Such requirement is held to be mandatory, and not to have been complied with in the case at bar.

Statutes — provisions — lots to be assessed — personal inspection of — for local improvement — benefits — amount of — determination of — mandatory.

2. The provisions of § 3726 of the Compiled Laws of 1913, which require a personal inspection of the lots sought to be assessed for a local improvement and a determination from such inspection of the amount to which they will be benefited, are mandatory, and are *held* not to have been complied with in the case at bar.

Standpipe — erection of — contract let for — special assessment levied — waterworks district — not created — reassessment — remanded to district court — for such purpose — supreme court has no power to so order.

3. Where a contract is let for the erection of a standpipe, and a special assessment levied therefor without a preliminary creation of a waterworks district, or a preliminary finding of necessity by the city council, the supreme court has no power under the provisions of §§ 3714 and 3715, Compiled Laws of 1915, alone to remand the case to the trial court for a reassessment.

Standpipe — erection of — contract let for — special assessment levied — without preliminary finding — reassessment may be made — council may go back — improvement necessary — finding of city council — resolutions of council — may correct errors.

4. Where a contract is let for the erection of a standpipe, and a special assessment levied therefor without a preliminary creation of a waterworks district, or a preliminary finding of necessity by the city council, a reassessment can be made under the provisions of § 3713, Compiled Laws of 1913; and in such a case the municipality is given power by the statute to go back and pick up the thread of its proceedings where it has been broken off, to establish a waterworks district, to pass a resolution of necessity,—if they, in fact, find the improvement to be necessary,—publish such a resolution, allow the statutory period for hearing objections, make the proper orders if objections are not made or are overruled, and proceed to the ultimate end of the collection of the assessment, and this although the improvement may already have been completed.

Parties similarly interested — suit by one — for benefit of all — lot owners — join as plaintiffs — nominal — must come into action — and claim and, accept thereunder — decree — what parties to be included.

5. One of several lot owners may sue on behalf of all others similarly situated to enjoin the collection of an illegal special assessment. Where, however, the other lot owners are not specifically made parties plaintiff, and have not personally joined in the action, but have merely stood by and allowed the action to be brought for all others similarly situated, and their names and lots and property to be mentioned in the body of the complaint, and the relief prayed to be asked for them as well as for the nominal plaintiffs, before they can be

benefited by the judgment, they should come in in some way and claim thereunder and accept the same, and the decree in such case should be that the cause is remanded with directions to enter judgment for the nominal plaintiff as prayed for in the complaint, and also for such of the other parties whose names and property are mentioned in the said complaint and who shall make application to the court to come under the judgment, and who shall prove themselves entitled thereto.

Opinion filed September 24, 1917.

Action to set aside a special assessment.

Appeal from the District Court of Ransom County, Honorable *Frank P. Allen,* Judge.

Judgment for defendants. Plaintiffs appeal.

Reversed.

*Rourke, Kvello,* and *Adams,* for appellants.

The proceedings of the city council were invalid, and the council lacked jurisdiction because it never, prior thereto, had created a "waterworks district" as by law required, or in any other manner. Price v. Fargo, 24 N. D. 440, 139 N. W. 1054; Rev. Codes 1905, § 2772, Comp. Laws 1913, §§ 3698, 3701–3703, etc.; Laws 1913, chap. 74.

It is the law that statutory requirements relating to special assessments should be strictly construed to the end that inequalities and confiscations should be reduced to the minimum. McLauren v. Grand Forks, 6 Dak. 397, 43 N. W. 710; Robertson Lumber Co. v. Grand Forks, 27 N. D. 556, 147 N. W. 249; Whittaker v. Deadwood, 23 S. D. 538, 139 Am. St. Rep. 1076, 122 N. W. 590; Haggart v. Alton, 29 S. D. 509, 137 N. W. 372; Shapard v. Missoula, 49 Mont. 269, 141 Pac. 544; Morse v. Omaha, 67 Neb. 426, 93 N. W. 737.

Whatever may be the basis of apportionment for a special assessment a taxing district must necessarily be established. Hoyt v. East Saginaw, 19 Mich. 39, 2 Am. Rep. 76; Whitney v. Hudson, 69 Mich. 189, 37 N. W. 184; Shapard v. Missoula, 49 Mont. 269, 141 Pac. 544.

It is the law that statutes authorizing the laying off or creation of improvement districts in municipalities are mandatory and jurisdictional. McCaffrey v. Omaha, 91 Neb. 184, 135 N. W. 552; Wiese v. South Omaha, 85 Neb. 844, 124 N. W. 470; Improvement Dist. v. Cotter, 71 Ark. 556, 76 S. W. 552; Asheville v. Wachovia Loan & T. Co. 143 N. C. 360, 55 S. E. 800.

The law gives no authority for the construction by special assessment of a standpipe, where a waterworks system already exists, and the council was without jurisdiction for such reason. Clay v. Grand Rapids, 60 Mich. 451, 27 N. W. 596; Comp. Laws 1913, § 3698, Laws 1913, chap. 74.

The proceedings were also invalid because the city engineer never prepared plans, specifications, and estimates for the work. Comp. Laws 1913, § 3703; Baker v. La Moure, 21 N. D. 140, 129 N. W. 464.

The proceedings were invalid, and the council had no jurisdiction, for the further reason that no resolution finding and declaring the work necessary to be done was ever passed or published by the council. Comp. Laws 1913, § 3704; McLauren v. Grand Forks, 6 Dak. 397, 43 N. W. 710; Stephan v. Daniels, 27 Ohio St. 527; Caldwell v. Carthage, 49 Ohio St. 334, 3 N. E. 602.; Shapard v. Missoula, 49 Mont. 269, 141 Pac. 544; German Lutheran Church v. Mt. Clemens, 179 Mich. 35, 146 N. W. 287; Pacific Paving Co. v. Verso, 12 Cal. App. 362, 107 Pac. 590; Michigan C. R. Co. v. Huehn, 59 Fed. 335; Hoyt v. East Saginaw, 19 Mich. 39, 2 Am. Rep. 76.

No notice of the proposed improvement was ever given the taxpayers because the purported resolution of necessity did not "intelligently" refer to the plans, specifications, and estimates of the work to be done. Comp. Laws 1913, § 3704; Whittaker v. Deadwood, 23 S. D. 538, 139 Am. St. Rep. 1076, 122 N. W. 590; Code, § 1303; 28 Cyc. 981; Atlanta v. Gabbett, 93 Ga. 266, 20 S. E. 306; Holden v. Chicago, 172 Ill. 263, 50 N. E. 181; State ex rel. Bowen v. Sioux Falls, 25 S. D. 3, 124 N. W. 963.

The proceedings were invalid because neither the city engineer nor any other competent person employed by the city supervised or inspected the construction of the standpipe or certified that the work had been done and completed in accordance with the contract. Comp. Laws 1913, §§ 3703, 3709, 3725; Baker v. La Moure, supra.

The proceedings were void and the council had no jurisdiction because the assessment made by the special assessment commission was illegal and invalid in every respect. There was no personal inspection of the lots or property which might be subjected to the special assessment, and no determination as to benefits. Robertson v. Grand Forks,

27 N. D. 556, 147 N. W. 249; McKenzie v. Mandan, 27 N. D. 546, 147 N. W. 808.

Plaintiffs are neither estopped nor are they guilty of laches. It is wholly immaterial whether or not they entered protests or objections. If the council and assessment commission were without jurisdiction, then their acts are invalid and "protests" would not validate them. They were engaged in doing an act where their method of procedure was fully outlined to them, by statute, and they are not allowed to act or perform in any other manner. McKenzie v. Mandan, and Robertson Lumber Co. v. Grand Forks, supra; McLauren v. Grand Forks, 6 Dak. 397, 43 N. W. 710; Lyon v. Tonawanda, 98 Fed. 362; Morse v. Omaha, 67 Neb. 426, 93 N. W. 734; Steckert v. East Saginaw, 22 Mich. 110; Hamilton, Taxn. by Special Assessments, §§ 723, 738.

*J. V. Backlund,* City Attorney, *P. H. Butler,* and *Chas. S. Ego,* for respondents.

"No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied." Const. art. 2; Rolph v. Fargo, 7 N. D. 640, 42 L.R.A. 651, 76 N. W. 242.

The power to impose special assessments goes back to the year 1691 in America. Holley v. Orange County, 106 Cal. 420, 39 Pac. 790; "The Better Tax in America," by John Rae, Contemporary Review, May, 1890; Hamilton, Taxn. by Special Assessments, § 7; Macon v. Patty, 57 Miss. 378, 34 Am. Rep. 451.

The principles of taxation by special assessment are sustained by the great weight of authority. Special assessments are derived from an exercise of the taxing power of government, rather than from an exercise of the police power or right of eminent domain. Holley v. Orange County, 106 Cal. 420, 39 Pac. 790; Nichols v. Bridgeport, 23 Conn. 189, 60 Am. Dec. 636; McComb v. Bell, 2 Minn. 295, Gil. 256; Adams County v. Quincy, 130 Ill. 566, 6 L.R.A. 155, 22 N. E. 624; State, Sigler, Prosecutor, v. Fuller, 34 N. J. L. 227; Schenley v. Allegheny, 25 Pa. 128; Reelfoot v. Dawson, 97 Tenn. 151, 34 L.R.A. 725, 36 S. W. 1041; Norfolk v. Young, 97 Va. 728, 47 L.R.A. 574, 34 S. E. 886; Allen v. Drew, 44 Vt. 174; Hackworth v. Ottumwa, 114 Iowa, 467, 87 N. W. 424; Weeks v. Milwaukee, 10 Wis. 243; Gould v. Baltimore, 59 Md. 378.

The only restrictions which are recognized are that such assessment must be for a public purpose, the property charged therewith must be specially benefited by the improvement, and the assessment must be apportioned according to the benefits, and must not be in excess thereof. State ex rel. Stateler v. Reis, 38 Minn. 371, 38 N. W. 97; Const. § 130; Code, subd. 5, § 3599.

These laws are liberally construed with reference to local improvements. Laws 1905, §§ 137, 154, chap. 62; Laws 1911, § 1, chap. 70; Laws 1913, chap. 74, § 1; Comp. Laws 1913, §§ 3698, 3714.

Such statutes should receive a construction which will, if possible, avoid an unjust or absurd conclusion. Lau Ow Bew v. United States, 144 U. S. 47, 36 L. ed. 340, 12 Sup. Ct. Rep. 517; Church of the Holy Trinity v. United States, 143 U. S. 457, 36 L. ed. 226, 12 Sup. Ct. Rep. 511; United States v. Kirby, 7 Wall. 482, 19 L. ed. 278; People ex rel. Atty. Gen. v. Utica Ins. Co. 15 Johns. 358, 8 Am. Dec. 243; Gray v. Cumberland County, 83 Me. 429, 22 Atl. 376; Crocker v. Crane, 21 Wend. 211, 34 Am. Dec. 228; Kane v. Kansas City, Ft. S. & M. R. Co. 112 Mo. 34, 20 S. W. 532.

The city council was authorized to create a "waterworks district." This can be extended and made to cover and include a greater area than the water-main district. Laws 1913, chap. 74.

If the council made a mistake in such proceedings, that should not vitiate the assessment. Comp. Laws 1913, § 3714.

The city council had power to build a standpipe, even though a waterworks system already existed. Appellant's argument would result in the conclusion that such cities as have no waterworks system may establish one by special assessment; but cities that have part of such a system may not complete it and make it efficient through the same means. This is not the law. Comp. Laws 1913, § 3698; 36 Am. Dig. Century ed. title "Municipal Corporations," ¶ 810; 28 Cyc. 1004, ¶ (iii) "Declarations of Necessity and Utility;" Hughes v. Parker, 148 Ind. 692, 48 N. E. 243; Spaulding v. Baxter, 25 Ind. App. 485, 58 N. E. 551; Barber Asphalt Paving Co. v. Edgerton, 125 Ind. 455, 25 N. E. 436.

Our statute does not say or even contemplate that the procedure provided therein shall be strictly or technically followed. The statutes do provide that mistakes shall not vitiate the proceedings, but may be

corrected. Shapard v. Missoula, 49 Mont. 269, 141 Pac. 544; Comp. Laws 1913, § 3704.

The statute does not require that the resolution of necessity shall do more than so declare, and give the location and a general description of the standpipe to be erected. It is not necessary to give the dimensions. Whittaker v. Deadwood, 23 S. D. 538, 139 Am. St. Rep. 1076, 122 N. W. 590; State ex rel. Bowen v. Sioux Falls, 25 S. D. 3, 124 N. W. 963.

The improvement as constructed was accepted and used and the contract under which it was built fully performed. Appellants knew the pipe was being erected; they knew it was for a public use; they knew it was to be paid for by special assessments, and yet they stood by and maintained a silent attitude until all these things had transpired, and made no objection. They are estopped now to complain. Tone v. Columbus, 39 Ohio St. 281, 48 Am. Rep. 438; People v. Weber, 164 Ill. 412, 45 N. E. 723; Hawthorne v. East Portland, 13 Or. 271, 10 Pac. 342; Chadwick v. Kelley, 187 U. S. 542, 47 L. ed. 293, 23 Sup. Ct. Rep. 175; Blake v. People, 109 Ill. 504; Hall v. Slaybaugh, 69 Mich. 484, 37 N. W. 545; Houston v. Wheeler, 52 N. Y. 641; State ex rel. Schintgen v. La Crosse, 101 Wis. 208, 77 N. W. 167; Hoefgen v. Harness, 148 Ind. 224, 47 N. E. 470; Givins v. People, 194 Ill. 150, 88 Am. St. Rep. 143, 62 N. E. 534; Stewart v. Wyandotte County, 45 Kan. 708, 23 Am. St. Rep. 746, 26 Pac. 683; Power v. Helena, 43 Mont. 336, 36 L.R.A.(N.S.) 39, 116 Pac. 415; Baltimore v. Porter, 18 Md. 284, 79 Am. Dec. 686; English v. Arizona, 214 U. S. 359, 53 L. ed. 1030, 29 Sup. Ct. Rep. 658; Bellingham Bay & B. C. R. Co. v. New Whatcom, 172 U. S. 315, 43 L. ed. 460, 19 Sup. Ct. Rep. 205; O'Dea v. Mitchell, 144 Cal. 374, 77 Pac. 1020; Spalding v. Denver, 33 Colo. 172, 80 Pac. 126; New Haven v. Fair Haven & W. R. Co. 38 Conn. 422, 9 Am. Rep. 399; Anderson v. Ocala, 67 Fla. 204, 52 L.R.A.(N.S.) 287, 64 So. 775; Draper v. Atlanta, 126 Ga. 649, 55 S. E. 929; Brownell Improv. Co. v. Nixon, 48 Ind. 195, 92 N. E. 693, 95 N. E. 585; Boswell v. Marion, 40 Ind. App. 289, 79 N. E. 1056; Mackay v. Hancock County, 137 Iowa, 88, 114 N. W. 552; Union P. R. Co. v. Leavenworth County, 89 Kan. 72, 130 Pac. 855; Barber Asphalt Paving Co. v. Garr, 115 Ky. 334, 73 S. W. 1106; Bacas v. Adler, 112 La. 806, 36 So. 739; Taber v. New Bedford, 135 Mass.

162; Harwood v. Huntoon, 51 Mich. 639, 17 N. W. 216; Tuller v. Detroit, 126 Mich. 605, 85 N. W. 1080; Stewart v. Detroit, 137 Mich. 381, 100 N. W. 613; Geib v. Morrison, 119 Minn. 261, L.R.A.—,—, 138 N. W. 24; Walsh v. First Nat. Bank, 139 Mo. App. 641, 123 S. W. 1001; Nelson v. Florence, 94 Neb. 847, 144 N. W. 791; State, Stewart, Prosecutor, v. Hoboken, 57 N. J. L. 330, 31 Atl. 278; Ashton v. Rochester, 133 N. Y. 187, 28 Am. St. Rep. 619, 30 N. E. 965, 31 N. E. 334; Loomis v. Little Falls, 176 N. Y. 31, 68 N. E. 105; Schank v. Asheville, 154 N. C. 40, 69 S. E. 681; Erickson v. Cass County, 11 N. D. 494, 92 N. W. 841; Kellogg v. Ely, 15 Ohio St. 64; Bartlesville v. Holm, 40 Okla. 467, L.R.A. —, —, 139 Pac. 273; Clinton v. Portland, 26 Or. 410, 38 Pac. 407; Smith v. Pence, 33 S. D. 516, 126 N. W. 709; Spence v. Milwaukee, 143 Wis. 47, 146 N. W. 22.

Not only does plaintiff's failure to act until after the completion of the work, but likewise his failure to appear before the assessment commission and make objections, estop him to attack the assessment and proceedings by injunction. Minnesota & M. Land & Improv. Co. v. Billings, 50 C. C. A. 70, 111 Fed. 972; Birmingham v. Abernathy, 178 Ala. 221, 59 So. 180; Webster v. Ferguson, 95 Ark. 575, 130 S. W. 513; Denver v. Dumars, 33 Colo. 94, 80 Pac. 114; Cosgrove v. Chicago, 235 Ill. 358, 85 N. E. 599; Greensburg v. Zoller, 28 Ind. App. 126, 60 N. E. 1007; Durst v. Des Moines, 150 Iowa, 370, 130 N. W. 168; State v. Norton, 63 Minn. 497, 65 N. W. 935; Alexander v. Tacoma, 35 Wash. 366, 77 Pac. 686.

It is too late to object to irregularities that do not in themselves cause a failure of jurisdiction upon the part of the council. Fehler v. Gosnell, 99 Ky. 380, 35 S. W. 1125; State, Cunningham, Prosecutor, v. Merchantville, 61 N. J. L. 466, 39 Atl. 639; Clinton v. Portland, 26 Or. 410, 38 Pac. 407; Taber v. Ferguson, 109 Ind. 227, 9 N. E. 723; Towne v. Newton, 169 Mass. 240, 47 N. E. 1029; Harney v. Benson, 113 Cal. 314, 45 Pac. 687; Muscatine v. Chicago, R. I. & P. R. Co. 79 Iowa, 649, 44 N. W. 909; Clements v. Lee, 114 Ind. 397, 16 N. E. 799; Jenkins v. Stetler, 118 Ind. 275, 20 N. E. 788; Walker Twp. v. Thomas, 123 Mich. 290, 82 N. W. 48.

There is no claim of bad faith, and though the officers may have been guilty of irregularities, yet injunction will not issue for one who

has waited until the completion of the work, its acceptance by the city, and the accruing of benefits. Traphagen v. Jersey City, 29 N. J. Eq. 206; Re Millvale, 162 Pa. 374, 29 Atl. 641; Hitchcock v. Galveston, 96 U. S. 341, 24 L. ed. 659; 1 Dill. Mun. Corp. ¶ 463; Frost v. New Orleans, 28 La. Ann. 417; State v. Norton, 63 Minn. 497, 65 N. W. 935.

BRUCE, Ch. J. This is an action in equity to restrain the levying, spreading upon the records, and collection of a special assessment in the city of Lisbon, North Dakota, and this opinion is written after a rehearing. The improvement involved is a standpipe which is to take the place of a water tank, and is to be used for the purposes of fire protection. The lower court held all the proceedings regular and valid, and in addition found the plaintiff guilty of laches. Plaintiff has appealed and has asked for a trial *de novo*.

The first point raised by plaintiff and appellant is that the city council lacked jurisdiction because it never created a waterworks district as required by § 3698 of the Compiled Laws of 1913. Section 3698 provides that "any city shall have power to create sewer, paving and water main-districts and waterworks districts, for the purpose of constructing a waterworks system, including the construction and erection of a pumping station, settling basins, filtration plant, standpipes and water towers, reservoirs and other contrivances and structures necessary for a complete waterworks system, etc." Section 3701 provides that "such water-main districts and waterworks districts, etc. . . . shall be of such size and number as the city council, after consultation with the city engineer, shall decide most practicable." Section 3711 provides: "All special assessments levied under the provisions of this article shall constitute a fund for the payment of the cost of the improvement for the payment of which they are levied, and shall be diverted to no other purpose, and those for the payment of sewer improvement shall be designated respectively 'sewer district no. . . . fund,' and such funds shall be numbered according to the number of the sewer district in which it is raised. Those collected for paving improvements shall be designated as 'paving district no. . . . fund,' and such fund shall be numbered according to the paving district in which it is raised; and those levied for the payment of water

mains shall be known as 'water-main district no.  .  .  .  fund,' and
such fund shall be numbered according to the number of the water-main
district in which it is raised, those levied for waterworks improvements
shall be designated as 'waterworks district no.  .  .  .  fund,' and such
fund shall be numbered according to the number of the waterworks
district; etc."

It would appear that this objection is well taken.  Prior to the pas-
sage of chapter 74 of the Session Laws of 1913, there was no law in
North Dakota whereby a waterworks system or a standpipe could be
constructed by a city and paid by a special assessment.  See Price v.
Fargo, 24 N. D. 440, 139 N. W. 1054.  And it was only after the
amendment referred to that assessments for such purposes could be
levied.  Prerequisite to the levying of such assessment was the creation
of a waterworks district.  It is true that before such time water-main
districts could be created and water mains could be paid for by special
assessments, and that such a district was created in the city of Lisbon
prior to the present improvement.  It does not, however, necessarily
follow that water-main and waterworks districts are the same and
cover the same territory.  We have held that the fundamental require-
ments of the special assessment laws must be complied with.  Robert-
son Lumber Co. v. Grand Forks, 27 N. D. 556, 147 N. W. 249, and
it seems to be a general holding that the formation of the improvement
district is the foundation for all subsequent proceedings.  McCaffrey
v. Omaha, 91 Neb. 184, 135 N. W. 552; Whitney v. Hudson, 69 Mich.
189, 37 N. W. 184.

Not only is this the case, but no resolution was adopted declaring
that the work was necessary to be done, and which resolution is required
by § 3704 of the Compiled Laws of 1913.  Section 3704 provides
among other things that "after the plans, specifications and estimates
.  .  .  shall have been filed  .  .  .  and approved as provided in the
preceding section the city council shall by resolution declare such work
or improvement  .  .  .  necessary to be done, such resolution shall
refer intelligently to the plans, specifications and estimates therefor,
and shall be published twice.  .  .  .  If the owners of a majority of
the property liable to be specially assessed for such proposed improve-
ment shall not, within fifteen days  .  .  .  file with the city auditor a

written protest against such improvement, then the majority of such owners shall be deemed to have consented thereto, etc."

It is true that on June the 2d a resolution and ordinance was adopted directing the city engineer to prepare plans and specifications, and that said resolution contained the following words: "Whereas it appears to the city council that it is absolutely necessary that something be done to provide adequate water supply to afford fire protection." It is also true that later and on the 16th day of June, 1913, another resolution was passed and was published twice, on the 19th and 26th days of June, to the effect that "whereas the plans, specifications, and estimates are now on file and have been approved for the construction of a standpipe, now, therefore, be it resolved by the city of Lisbon, state of North Dakota, that the standpipe be and the same hereby is ordered and declared to be constructed." These resolutions, however, fall far short of a compliance with the statute. To say that the construction of a standpipe is necessary is not the same thing as saying that the construction of a standpipe, according to certain plans and specifications, is necessary, nor is a direction or order to construct a standpipe, according to such plans, a finding of necessity. The statute requires not merely a resolution of necessity, but a resolution that shall refer intelligently to the plans and specifications. Its purpose is clear and is twofold. It is that the city officers shall themselves carefully consider the question of necessity as applied to the plans, and themselves be confronted with the determination of the question of actual necessity as well as of desirability. It means that they shall really consider the matter, and from every standpoint. The statute also purposes that the property owner may have the plans and specifications before him, or a proper reference thereto, in order that he may determine for himself whether in reason he should protest against the improvement. Whittaker v. Deadwood, 23 S. D. 538, 139 Am. St. Rep. 1076, 122 N. W. 593. These requirements are mandatory, and the property owner is entitled to a reasonable compliance therewith. Robertson Lumber Co. v. Grand Forks, 27 N. D. 556, 147 N. W. 249; Morrison v. Chicago, 142 Ill. 660, 32 N. E. 172.

But this is not all. Section 3726 of the Compiled Laws of 1913 provides for a personal inspection of all of the lots, and the determination from such inspection of the particular lots which will be

38 N. D.—6.

benefited and the amount to which such lots will be so benefited. It also provides that the Commission shall "assess against such of said lots and parcels of land such sum not exceeding such benefits as shall be necesary to pay its just proportion of the total cost of such work."

All that the chairman of the Commission can be made to testify to is that they spent one or two hours in examining the lots; that they took an automobile and went from one part of the city to another, and that some of them may have gotten out; that he couldn't tell whether he got out or not and looked at any of them; that to arrive at the amount necessary to be raised, they ascertained the cost of the standpipe, and then took that amount and divided it by the number of lots; that they didn't discriminate in any way as to the benefit that might accrue to one lot and the benefit that might accrue to some other lot; that they merely took as a basis lots that were within 1,200 feet of hydrants, as they understood that the city hose would cover 1,200 feet; and "that they simply established an arbitrary standard of their own by dividing the total cost of the standpipe by the number of lots within the radius they purported to assess."

We have repeatedly held that the matter of assessing property cannot be trifled with, and that owners thereof are entitled to at least the expenditure of some time on the part of the Commission. Robertson Lumber Co. v. Grand Forks, supra; McKenzie v. Mandan, 27 N. D. 546, 147 N. W. 808.

Nor do we believe that the fact that the plaintiff lived within 400 feet of the standpipe and did not complain until after the standpipe was completed estop the plaintiff from proceeding in this case. The notice of special assessment was dated May 28, 1914, and called for a hearing on June 15, 1914. The present action was commenced on July 17, 1914. Plaintiff testified that, until he saw the notice of special assessment on May 28, 1914, he had no notice that the work was to be paid for by special assessment and that such notice was not filed with the city auditor until August 11, 1914. The defects, too, were fundamental and the failure to sooner protest was not fatal. Robertson Lumber Co. v. Grand Forks, supra; Keese v. Denver, 10 Colo. 112, 15 Pac. 825; Chicago v. Wright, 32 Ill. 192.

The next question to be determined is whether the injunction prayed for by the petitioner should be summarily issued and the case thus

disposed of, or whether an opportunity can be afforded for the correction of the errors complained of and for a new assessment. If the opportunity may be afforded it must be under the provisions of either §§ 3713, 3714, or 3715 of the Compiled Laws of 1913. A reading of §§ 3714 and 3715 leads us to believe that they were not intended to cover jurisdictional defects such as we have held to have existed in the failure to create the waterworks district and to adopt and publish the resolution of necessity, though they would relate to the defects in the method of the assessment. Section 3713, however, is much more comprehensive. It provides that "in all cases where any assessment, or any part thereof, as to any lot, lots or parcels of land assessed under any of the provisions of this article, or of any law of any city prior to this article, *for any cause whatever, whether jurisdictional or otherwise,* shall be set aside, *or declared void* by any court, the city council shall, without unnecessary delay cause a reassessment or new assessment to defray the expense of such improvement to be made, whether such improvement was made under this article or under any law of any city prior to this article, and such reassessment or new assessment shall be made as nearly as may be, as herein provided for making the assessment therefor in the first instance; and may bear interest from the date of the approval of such assessment so set aside, and when the same shall have been made and confirmed by the city council, it shall be enforced and collected in the same manner that other assessments are enforced and collected under this article, and in all cases where judgment shall hereafter be refused or denied by any court for the collection or enforcement of any special assessment, or where any court shall hereafter set aside or declare void any assessment upon any lot or parcel of land for any cause, the said lot or parcel of land may be reassessed or newly assessed from time to time, until each separate lot, piece or parcel of land has paid its proportionate part of the costs and expenses of such improvement, as near as may be; provided, that when any special assessment shall be declared void, or set aside by judgment of the supreme court, for a cause affecting other like assessments, all assessments so affected may be vacated by resolution of the city council, and thereupon a reassessment of the property affected thereby shall be made as herein provided, and may bear interest as hereinbefore provided."

In the case of Wiese v. South Omaha, 100 Neb. 492, 160 N. W. 890, a very similar statute was passed upon. That statute, being § 4748 of the Revised Statutes of Nebraska of 1913, provided that "whenever an assessment for any of the improvements provided for herein or for any local improvement which has been heretofore made, or which hereafter may be made, is void or has been, or may be declared void, or its enforcement under the laws of this state or the charters of cities of this class, is not possible or is refused, or for any other cause the same is void or may be declared void by any court, either directly or by virtue of any decision of such court, the mayor and council of such city shall, by ordinance, order and make a new assessment or reassessment upon the lots, blocks, land and parcels of lands which have been or will be benefited by such local improvements, it being the true intent and meaning of this chapter to make the cost and expense of all local improvements payable by the real estate benefited to the extent of the improvements by the same, either by reason of the first assessment or reassessment therefor, and notwithstanding the proceedings of the mayor and council, or of any of the officers of the city, may be found to be defective, irregular or void, including among other things the want of jurisdiction, and the city council or such officer to proceed in the premises, as well as other defects, except where such assessments may be made for an unauthorized purpose, or there is an entire and complete want of authority in the council to proceed in the premises."

It only differed from the statute of North Dakota in its clear expression of intention, and its mandatory provisions were practically identical. The court in its opinion called attention to the fact that the assessment in question had, in a prior proceeding, been declared void on the ground that the city council *was without jurisdiction to make the assessment, since the ordinance creating the improvement district failed to properly define the limits of the district.* See Wiese v. South Omaha, 85 Neb. 844, 124 N. W. 470.

It then held that it was competent under the provisions of § 4748, Revised Stat. of 1913, just quoted for the city council to pass a new ordinance for the creation of the improvement district, and still another for the assessment of the benefits. In passing upon this question it said:

"Plaintiffs contend that the section quoted does not authorize a

reassessment under the circumstances of this case. Does the statute authorize a reassessment where the original assessment has been declared void on the ground that the ordinance creating the improvement district failed to properly define the limits thereof? It is the contention of plaintiffs that in such a case there is an 'entire and complete want of authority in the city council to·proceed in the premises,' and for that reason a reassessment was not authorized. In the former opinion it was held that failure of the ordinance to properly define the limits of the district rendered the assessment void for want of jurisdiction. In one sense want of jurisdiction is 'want of authority in the city council to proceed in the premises.' The statute, however, provides that reassessments may be made though the proceedings may be found to be void for 'the want of jurisdiction.' Without attempting a definition, it may be said that the city council did not proceed with 'entire and complete want of authority' merely because the ordinance creating the improvement district did not properly define the limits thereof. The proceedings of the city council were based upon a petition filed with the city clerk which was signed by owners representing a majority of the taxable feet front upon the street to be improved. The city council did not proceed with 'entire and complete want of authority' within the meaning of that term as used in the section quoted.

"Is the reassessment statute unconstitutional as contended by plaintiffs? The power of the legislature to authorize a reassessment in case the first assessment has been declared invalid for failure to comply with provisions *which the legislature might in the first instance have dispensed with is generally upheld* [citing cases]. The first assessment was declared void for failure of the ordinance creating the improvement district to properly define its limits. The legislature *might have authorized the city council on its own initiative to improve the street, and, after the improvement had been completed, to create an improvement district* and provide for the assessment of the property benefited, if notice thereof and opportunity were given to property owners to be heard upon the assessment."

Again, in the case of Thayer Lumber Co. v. Muskegon, 157 Mich. 424, 122 N. W. 189, the court passed upon the question of reassessment where the original assessment was held void because the resolution adopted by the said city council did not designate the territory to be

covered by the sewer district, and because the published notice of the council meeting was insufficient. In doing this it construed § 15 of article 2 of the city charter, which provided that "whenever any special assessment shall, in the opinion of the council, be invalid by reason of any irregularity and informality in the proceedings, and if any court of competent jurisdiction shall adjudge such assessment to be illegal, . . . the council shall . . . have power to cause a new assessment to be made."

It held that the council might cause a new assessment to be made, and it sustained such an assessment, although it was not only necessary to create the improvement district, *but to find the necessity for the work after most of it had been done.*

This rule was also applied in Upington v. Oviatt, 24 Ohio St. 232, and *as to the whole assessment.* Where "the first assessment was made during the progress of the work, and was intended to cover only a part of the expense of the improvement, the second assessment ordinance made no reference to the first, but it, together with the first, was intended to cover the entire cost. At the time it was made, however, the improvement had not been completed. A substantial part of the work at the time the suit was commenced, and at the time of the trial in the district court, still remains unperformed."

Again, in the case of Keese v. Denver, 10 Colo. 112, 15 Pac. 825, and where the improvement, a sewer, had been *entirely completed* at the time of the bringing of the action, the court said: "It is urged by counsel for appellees that plaintiffs are estopped from now questioning the legality of the assessment, because they allowed the work to progress to completion without making any objection. The legality of the assessment is attacked upon the ground that the city council was not authorized to cause the sewer to be constructed, and hence not authorized to levy an assessment to pay for its construction. The objection goes to the origin of the proceedings, and is jurisdictional. The principles of estoppel have no application to the facts in this case. Chicago v. Wright, 32 Ill. 192; Re Sharp, 56 N. Y. 256, 15 Am. Rep. 415."

Again, in the case of Enid v. Gensman, — Okla. —, 158 Pac. 377, although the court held that in the particular case the statutory provisions had not been complied with, it specifically upheld the validity

of §§ 576 and 644 of the Revised Laws of Oklahoma, 1910, which provided that:

Section 576: "In case the corporate authorities of any city have attempted to levy an assessment for improvements, which assessment may have been informal, *illegal or void* for want of sufficient authority or other cause, the council of such city shall reassess any such assessment in the manner provided in this chapter."

Section 644: "In the event that any such assessment shall be found to be invalid or insufficient, in whole or in part, for any reason whatsoever, the city council may at any time in the manner provided for levying an original assessment proceed to cause a new assessment to be made and levied which shall have like force and effect as an original assessment."

These sections are almost identical in language with the North Dakota provisions, which expressly provide that the new assessment shall be "as nearly as may be, as herein provided for making the assessment therefor in the first instance," and the case is important in that it outlines the procedure to be followed and which must necessarily follow under the statute.

"It will be seen," says the court, "that the former section provides for making the reassessment in the manner provided in this chapter," which is the manner provided for levying an original assessment referred to in the latter section.

"It seems clear that 'levying an original assessment' does not, in a case of lack of jurisdiction in the first instance, consist alone in the resolution, appointing the appraisers, the reception and consideration of their report, and the final determination of the apportionment, but consists rather in taking all those requisites and jurisdictional steps which have been omitted, beginning with the resolution of necessity (in a case not initiated by petition), if that resolution has been improperly passed or published. In other words, the municipality is given power to *go back and pick up the thread of its proceedings where it has been broken,* and to proceed to the ultimate end of the collection of the assessment; but it is not authorized to begin in the middle without connecting the line of proceedings with the property owner."

We are satisfied that the procedure in the case at bar is for the city council to "pick up the thread of its proceedings where broken," estab-

lish a waterwork's district, pass a resolution of necessity, if they in fact find the improvement to be necessary, publish such resolution, allow the statutory period for hearing objections, make the proper orders if objections are not made or are overruled, and proceed to the ultimate end of the collection of the assessment. In other words, make such reassessment as nearly as may be in the manner provided for making the assessment in the first instance.

We are not unmindful of the Oregon Case of Birnie v. La Grande, 78 Or. 531, 153 Pac. 415, in which it was held that "where a street-improvement assessment was invalid because the notice thereof to property owners, made a jurisdictional prerequisite by the charter, was defective, no subsequent reassessment of the cost of the improvement under the provisions of the charter was valid. Since the giving of notice in the terms described by the charter, which was the organic law under which the city acted, was a condition precedent to securing jurisdiction to make an improvement and to cure the invalidity in the proceedings, it was necessary that they be had *de novo* with valid notice and compliance with the charter in all respects to give jurisdiction," and that the charter contemplated work to be done in the future, and, if the improvement had been already made, it was impossible to make a reassessment *in like* manner for the same purpose.

We realize also the pertinence of the following language used in the case of Murray v. La Grande, 76 Or. 598, 149 Pac. 1020;

"The quasi process in the present instance, by which alone the city could acquire jurisdiction, is the notice described in the quoted provisions of the charter. It is required, among other things, that there shall be contained therein a description of the improvement proposed, the boundaries of the district to be affected or benefited thereby, and the estimated cost thereof. This language plainly contemplates a work to be done in the future. It had no reference to past improvements. It manifestly gives to the property holder who is to be assessed the right to be heard in advance, not only as to the amount of the levy, but also as to the kind of improvement. It is conceded by the answer that this was not done in the first instance. In respect to the final effort to tax the realty of the plaintiffs, the improvement had already been made, whatever its kind or nature; the question about the sort to be adopted had been irrevocably decided; the payment, whether good

or bad, was in place,—all without a previous opportunity for plaintiffs to be heard upon that subject. Confessedly, as disclosed by the answer, this charter right of the taxpayer was utterly ignored in the beginning for want of notice. . . . When the improvement is already made, it is impossible to make a reassessment 'in like manner for the same purpose' as required by the charter. In other words, after the doing of the work, whether good, bad, or indifferent, a situation is presented to which the present provisions of the La Grande charter cannot be applied. The giving of notice in the terms described by the excerpts of the organic law under which that municipality operates is a condition precedent which must be observed before the city can acquire jurisdiction to make an improvement. The contention of the defendants would make the acquisition of jurisdiction a condition subsequent. The plain logic of their position is that, notwithstanding the provisions of the charter, they may first decide and afterwards hear. No independent or different proceeding is established by the charter for collecting such a tax. It simply provides for a reiteration of the same process, and does not dispense with any of the charter rights reserved to the property holder. The situation is simply one where the water of jurisdiction has run past the mill of opportunity. The time to have asserted the power to reassess was before the right of the taxpayer to be heard on the kind of improvement had been ignored and rendered worthless. If jurisdiction had been acquired regularly at the outset, it would have been permissible as the charter now stands to return and correct errors in the apportionment of the expense by a reassessment. In any case, if the city would retrace its steps for corrective purposes, it must go clear back to where it obtained jurisdiction, to which alone it can tack renewed efforts to tax property. It would have been competent for the legislative power of the town to dispense with all previous notice of intention to install betterments, and to empower the council to call upon the taxpayer for the first time after the work was completed, but it has not done so. By failing to give sufficient previous notice and yet persisting in the prosecution of the work, the city has reversed the chronological order of the process enjoined by its charter.

"The case presented by the defendants is one in which they have decided beforehand against the taxpayer in one of the most important particulars of the assessment scheme. Jurisdictional power cannot, like

the phenix, rise from its own ashes; and where the case presented is one in which full compliance with the essentials of jurisdiction cannot be had, repetition of the same process will never confer jurisdiction. In short, it appears by the record that, on account of the improvement having been previously made and not still in contemplation, it is impossible for the council, in the language of the charter, to cause a new assessment 'to be made in like manner for the same purpose.' "

We believe, however, that the question is, after all, of legislative intention and of legislative power. We believe, indeed, that the legislature could, in the first instance, have provided for the creation of public improvements by the municipality, and then have provided for the payment for the same by special assessment; provided that their reasonable necessity was shown and the property owners were in fact benefited and had an opportunity to be heard as to the amount of their assessment, and that such assessment was not in excess of the benefit. This was held in the case of Wiese v. South Omaha, supra. This, in fact, is what § 3713 of the Compiled Laws of 1913 of the state of North Dakota authorizes. It, in fact, provides for the assessment to be made "whether such improvement *was made* under this article or under any law." It uses the words, "was made," and not, "is made," or, "is to be made." The intention is clear, and we believe that the power exists.

There is still another question to be determined, and that is whether the relief prayed for should be confined merely to the plaintiff's lots, or whether the lots of others similarly situated should also be affected. The action was originally instituted by Alfred M. Kvello "on behalf of himself and all others similarly situated who would come in and contribute to the expense of the action;" and in the complaint was contained a full list of all of the other lots affected, a reference thereto throughout, and a prayer for an injunction "from spreading such assessment upon the records of said city or county, and that the treasurer be enjoined from collecting or attempting to collect any of such assessment so attempted to be levied upon the said lots or parcels of land so specified in exhibit A." It is true that later on and on motion of plaintiff, but without any objection on the part of the defendant, the words, "who will come in and contribute to the expense of this action," were stricken out. This, however, was mere generosity on the part of the

plaintiff, and cannot seriously affect the situation. The action was none the less brought on behalf of all of the lot owners mentioned in exhibit A.

There is no doubt that this can be done, and that the judgment can be made applicable to and be taken advantage of by such persons. Section 7406 of the Compiled Laws of 1913 provides: "When the question is one of a common or general interest of many persons, or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole." This is merely a statement of the general rule, and the general rule is applicable to controversies over special assessments. See Hamilton, Taxn. by Special Assessments, § 805; Phillips, Code Pl. § 458; Upington v. Oviatt, 24 Ohio St. 232; 15 Enc. Pl. & Pr. 627; 22 Cyc. 912; 28 Cyc. 1188.

In the case of Keese v. Denver, 10 Colo. 112, 15 Pac. 825, the improvement, a sewer, had been entirely completed at the time of the bringing of the action; and not only was it urged that the plaintiffs were estopped from questioning the legality of the assessment because they allowed the work to progress to completion without making any objection, but a demurrer was interposed to the complaint on the ground that "there are seven plaintiffs and each has a separate interest in distinct portions of said real estate, and there is no joint interest of any of the plaintiffs in any portion of such real estate, and the same relief is asked *for all other persons similarly situated* and interested as for themselves." The court, however, said: "The ruling of the court below upon the demurrer to the complaint being favorable to appellants, their appeal does not necessarily require an expression of opinion upon that ruling; but as counsel for both appellants and appellees have argued the questions presented by the demurrer at considerable length, we will, without going into a review of the arguments made and authorities relied upon, state our conclusions upon the questions presented. The two grounds of the demurrer may be treated unitedly. Mr. Pomeroy, in his able treatise on Equity Jurisprudence, has collated all the important cases upon the question of equity jurisdiction in cases of this character, and, after an exhaustive review and comparison of the cases, has expressed his conclusions, and from which we quote the following: 'Under the greatest diversity of circumstances,

and the greatest variety of claims arising from unauthorized public acts, private tortious acts, invasion of property rights, violation of contract obligations, and notwithstanding the positive denials by some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' nor 'community of right' or of 'interest in the subject-matter,' among these individuals, but where there is, and because there is, merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body. 1 Pom. Eq. Jur. § 269. Equity assumes and exercises jurisdiction in cases of this character in order to prevent a multiplicity of suits. 1 Pom. Eq. Jur. § 260. The rule that one or more plaintiffs may sue for the benefit of all others similarly situated and interested is well settled, and in some states it is held that an allegation of this kind is necessary to confer equity jurisdiction. Bull v. Read, 13 Gratt. 78; Kennedy v. Troy, 14 Hun, 308; Wood v. Draper, 24 Barb. 187; McClung v. Livesay, 7 W. Va. 329. The demurrer was properly overruled."

It would seem, however, that the decree or judgment could hardly be "that the treasurer be enjoined from collecting or attempting to collect any of such assessment so attempted to be levied upon said lots or parcels of land so specified in exhibit A," as is prayed for in the complaint, but should rather be that the treasurer be enjoined from collecting or attempting to collect any of such assessment so attempted to be levied upon said lots or parcels of land so specified in exhibit A and the owners of which come in and accept the benefit of the judgment.

It seems, indeed, quite obvious that a person cannot be compelled to be a plaintiff in a lawsuit; that is to say, to be made an objector to a special assessment without his consent, and that this consent should in some way or other be obtained, and this even though the party is specifically named and identified in the complaint. The same rule in this respect, we believe, applies to parties who are specifically named, as to those who are only generally referred to. They should come in in some way and accept the benefit of the judgment or claim under it.

The rule, however, seems to be that "the general averment, descriptive of the persons as a whole, is enough, and the question whether any particular individual is included within it will arise and must be decided upon his application to be admitted as a participant in the suit while in progress or in the relief after judgment. If any opposition is made to his application, the matter will be sent to a master or referee to hear and report, and upon his report the court will make the proper order admitting or rejecting the applicant." Pom. Remedies & Remedial Rights, §§ 296–298; Stevens v. Brooks, 22 Wis. 695–706.

The judgment of the District Court is reversed and the cause is remanded, with directions to enter judgment for the plaintiff as prayed for in the complaint, and also for such of the other parties whose names and property are mentioned in the said complaint, and who shall make application to the court to come under the judgment, and who shall prove themselves entitled thereto. This decree or judgment, however, will be without prejudice to a reassessment under the provisions of § 3713 of the Compiled Laws of 1913, and as outlined in this opinion.

CHRISTIANSON, J. (dissenting). I am unable to concur in the conclusions reached by my associates on many of the questions discussed in the majority opinion in this case. And in view of the importance of these questions, I deem it desirable to indicate wherein I differ from my associates.

I agree with the majority with respect to the validity of statutes providing for reassessments. These statutes have almost universally been sustained. Hamilton, Taxn. by Special Assessments, §§ 823 et seq.; Welty, Special Assessments & Taxn. § 305; Page & J. Taxn. by Local & Special Assessments, §§ 956 et seq., Sutherland, Stat. Constr. § 675.

Gray, in his able work on Limitations of the Taxing Power, in dealing with the subject of "jurisdictional" defects and requirements divides them into two classes,—those which are jurisdictional for the local taxing officers, and those which are jurisdictional in the legislature itself,—because the people, the superiors of the legislature, have, in written constitutions or inherent restraints upon the legislative

power, declared that they are essential. Gray, Limitations of Taxing Power & Public Indebtedness, p. 616.

Page and Jones (Page & J. Taxn. by Local & Special Assessments, § 961), say: "It has been said that the test of the power of the legislature to authorize a reassessment is whether the infomalities in the proceedings are such as the legislature could have dispensed with in advance."

In discussing the power of a legislature to enact retrospective curative statutes, Judge Cooley, in view of the authorities, asserted the following rule: "If the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." Cooley, Const. Lim. 371.

By applying these principles, the Supreme Court of the United States has sustained legislative enactments providing for reassessments even where the original statute was unconstitutional in failing to provide for notice to the property owner. Spencer v. Merchant, 125 U. S. 345, 31 L. ed. 763, 8 Sup. Ct. Rep. 921. The same great court has also held that a reassessment may be levied for an improvement for which there was no statutory authority to levy an assessment when the improvement was made, and which the public corporation making the improvement had determined to pay for by general taxation. Seattle v. Kelleher, 195 U. S. 351, 49 L. ed. 232, 25 Sup. Ct. Rep. 44. And that a legislative body may confirm the proceedings of an officer "of a subordinate municipality, or other authority therein, which, without such confirmation, would be void, provided it had the power in the first instance to authorize such officer, or board of municipal subdivision to make the improvements and levy the assessments in the manner in which they were made." 4 Enc. U. S. Sup. Ct. Rep. 457; Mattingly v. District of Columbia, 97 U. S. 687, 690, 24 L. ed. 1098, 1099. See also Philip Wagner v. Leser, 239 U. S. 207, 60 L. ed.

230, 36 Sup. Ct. Rep. 66; Houck v. Little River Drainage Dist. 239 U. S. 254, 60 L. ed. 266, 36 Sup. Ct. Rep. 58.

In answering the contention that complainant was deprived of his property without due process of law, because the special assessment was levied after the improvement had been completed, and that the statute there under consideration was retroactive in its operation and disturbed rights which had accrued and become fixed in the property holders long before the statute was enacted, the supreme court of Maryland, and the United States Supreme Court in a recent case (Leser v. Philip Wagner, 120 Md. 671, 87 Atl. 1040, 239 U. S. 207, 60 L. ed. 230, 36 Sup. Ct. Rep. 66), quoted with approval the following language from Seattle v. Kelleher, supra: "At the end the benefit was there, on the ground, at the city's expense. The principles of taxation are not those of contract. *A special assessment may be levied upon an executed consideration; that is to say, for a public work already done* [citing authorities]. . . . *Of course it does not matter that this is called a reassessment. A reassessment may be a new assessment. Whatever the legislature could authorize if it were ordering an assessment for the first time it equally could authorize, notwithstanding a previous invalid attempt to assess.* The previous attempt left the city free 'to take such steps as were within its power to take, either under existing statutes, or under any authority that might thereafter be conferred upon it, to make a new assessment upon the plaintiff's abutting property' in any constitutional way."

I therefore fully agree with the conclusion of my associates that the provisions of the laws of this state relating to reassessments are valid enactments. In fact, no one has assailed their constitutionality on this appeal. The questions in dispute on this appeal relate to the validity of the original assessment, and what method of reassessment should be adopted in event the original assessment is held to be invalid.

The majority opinion holds that the defects in the preliminary proceedings vitiated the assessment based thereon, and requires not only a reassessment, but a *pro forma* compliance by the city officials with the provisions of the statutes,—*i.e.,* the city council is required to create a waterworks district, pass a resolution of necessity, and in general go through the forms prescribed by the statute. I cannot concur in this part of the opinion.

The proceedings outlined by the statute with respect to public improvements to be paid for by special assessments are as follows:

1. Creation of the improvement district. Comp. Laws, § 3698. 2. Preparations of plans and specifications of the proposed improvement by the city engineer. at the direction of the city council. Comp. Laws, § 3703. 3. Passage and publication of resolution declaring work necessary. Comp. Laws, § 3704. 4. Advertisement for bids for construction of improvement, and letting of contract for such improvement. Comp. Laws, §§ 3705–3709. 5. After completion of the improvement, assessment of benefits, publication of notices and hearings with respect thereto. Comp. Laws, §§ 3724–3728.

The city council of Lisbon had created a water-main district, but failed to adopt a formal ordinance or resolution creating a waterworks district. It did, however, adopt the following resolution, which was duly published in the manner and for the length of time required for the publication of a resolution declaring a proposed improvement to be necessary, viz.:

"Whereas, it appears to the city council that it is absolutely necessary that something be done to provide adequate water supply to afford proper fire protection for the city of Lisbon, and whereas, in the judgment of the city council, the only proper way to procure such water supply and fire protection is by the erection of a standpipe, therefore, be it resolved that the city engineer be, and is hereby, empowered to prepare plans and specifications."

It was stipulated as a fact upon the trial that "the defendant city of Lisbon through its officers, the city council, and under and by their direction, erected or caused to be erected a standpipe; . . . that said standpipe within said city is centrally located; that said standpipe was erected for, and will supply water to, the whole of the inhabitants of said city wherever there are water mains located and laid to convey such water, and adequate fire protection within 800 feet of said water mains."

It was further stipulated as a fact upon said trial "that during all the time consumed by the construction of the standpipe by the city council, plaintiff knew the standpipe was being built and erected, and could see the operation of the mechanics from his dwelling house, and offered no objection to the construction of the same."

Plaintiff in his testimony admits that in the summer of 1913 there was considerable complaint over a shortage of city water, and a general discussion by the citizens as to the advisability of providing for an adequate supply of water so as to insure fire protection. Plaintiff's own testimony shows the necessity of the improvement. The only complaint he makes is not that the improvement was made, but the manner in which it is to be paid for. It was his desire that it be paid for by general taxation, and not by special assessment. Of course the courts are not permitted to sit in review upon the fiscal or governmental policies of legislative bodies.

"The legislature, in the exercise of its power of taxation, has the right to direct the whole or a part of the expense of a public improvement, . . . to be assessed upon the owners of lands benefited thereby; and the determination of the territorial district which should be taxed for a local improvement is within the province of legislative discretion [cases cited]. If the legislature provides for notice to and hearing of each proprietor, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law." Spencer v. Merchant, 125 U. S. 345, 31 L. ed. 763, 8 Sup. Ct. Rep. 921.

The legislature has declared that the public improvement under consideration is one for which a special assessment may be levied upon the property benefited. The legislature has also provided for notice to, and hearing of, each person assessed before the special assessment commission and before the city council on appeal from such special assessment commission. And it is undisputed that such notice was given in the case at bar.

The legislature not only adopted § 3713 (quoted in the majority opinion), providing for reassessments by the city council in cases where an assessment, or any part thereof, as to any lot or parcel of land is set aside, but in the same statute and immediately preceding said section it expressly declared that—*"no error or omission which may be made in the proceedings of the city council, or of any officer of said city in referring, reporting upon, ordering or otherwise acting concerning any local improvement provided for in this article, or in making or certifying any assessment, shall vitiate or in any way affect any such assessment, but if it shall appear that by reason of such error or omis-*

38 N. D.—7.

*sion substantial injury has been done to the party or parties claiming
to be aggrieved, the court shall alter such assessment as may be just, and
the same shall then be enforced."* Comp. Laws, § 3714.

And the legislature directed that *"whenever any action or proceeding
shall be commenced and maintained before any court to prevent or
restrain the collection of any special assessment or part thereof, made or
levied by the officers of any city for any purpose authorized by law,*
. . . and maintained as aforesaid to vacate or set aside any sale
of real estate for such special assessment, or to cancel any tax certificate
or deed given under such sale, *and such assessment shall be held to be
void by reason of noncompliance with this article, the court shall deter-
mine the true and just amount which the property attempted to be so
assessed by said special assessment should pay,* to make the same uni-
form with other special assessments for the same purpose, and the amount
of such assessments as the same appears on the assessment list thereof
shall be prima facie evidence of such true and just amount, *and judg-
ment must be rendered and given therefor against the party liable for
such special assessment, without regard to the proceedings had for the
levy thereof,* and such judgment shall be a lien upon the property upon
which a special assessment shall have been levied, of equal force and
effect as the lien of special assessments, and the lien of such special judg-
ment shall be enforced by the court in such action; provided, that no
action for either of said purposes shall be maintained unless it is com-
menced within six months after such special assessment is approved,
and in case of such assessment heretofore approved, within six months
after this article takes effect." Comp. Laws, § 3715.

It will be noted that the language of §§ 3714 and 3715 is very broad.

In my opinion these sections are a clear and unequivocal declaration
on the part of the legislature that, when a local improvement has been
constructed for which a special assessment may be levied, a person
assessed cannot after the local improvement has been constructed, in an
action to enjoin the collection of assessment, assail the assessment for
any error or omission in the proceedings which it was within legislative
power to dispense with, unless he shows "that by reason of such error
or omission substantial injury has been done to the party or parties
claiming to be aggrieved," in which case "the court shall alter such

assessment as may be just, and the same shall then be enforced."
§ 3714, supra. And in such case "such assessment shall be held to be
void by reason of noncompliance with this article [the provisions of law
relative to special assessments], the court shall determine the true and
just amount which the property attempted to be so assessed  .  .  .
should pay  .  .  .  and judgment must be rendered and given therefor
against the party liable for such special assessment, without regard to
the proceedings had for the levy thereof." § 3715, supra. Where is
there any room for doubt as to what the legislature meant by these
statutory provisions? It is inconceivable how intent could have been
more clearly and positively expressed.

As was said by the court of New Jersey, in considering a similar
statute: "The language here employed appears to leave no doubt as to
the purpose of the legislature. It was to assign to the court the province
of seeing that its suitors who were liable, or whose property was sub-
ject to these assessments for public improvements and who were seeking
to vacate any of such assessments, should in every event be made to
bear their fair and legal share of the burden. This provision was well
timed and most salutary; for while it preserves to the owner of property
the ability to relieve himself from so much of his tax as is unjust, it,
at the same time and by a summary procedure, compels him to do jus-
tice to the public by paying such part of his assessment as is justly
due. This law is, in the highest sense, remedial, and should be con-
strued with liberality, so as to abate the mischief of taxpayers avoiding,
by litigation, their honest dues to the government." Elizabeth v. State,
45 N. J. L. 157, 159.

It has been suggested that the legislature could not confer upon the
courts the power to assess taxes. While statutes authorizing courts to
assess taxes have generally been held invalid, those authorizing the
exercise by the court of a certain supervision over, and rendition by it
of final judgment in, special assessment or tax proceedings, are gen-
erally recognized as valid. 8 Cyc. 836; 37 Cyc. 1111.

In Wells County v. McHenry, 7 N. D. 246, 254, 74 N. W. 241,
this court, speaking through Chief Justice Corliss, said: "We are not
aware of any principle of law which prevents the legislature from
vesting in the ordinary courts of justice the duty of revising the action

of assessors whenever their valuation of property is challenged by the citizen, or even the power to act as equalizing boards before which all assessments shall be brought for revision prior to their becoming final."

The Federal courts have frequently, under their general equitable powers, reviewed actions of boards of equalization. And the Federal Supreme Court recently sustained decrees of a United States district court enjoining the board of valuation and assessment of Kentucky from enforcing that portion of a certain tax which the court determined to be in excess of that which the taxpayer was justly obliged to pay upon a fair valuation of his property. Louisville & N. R. Co. v. Bosworth, 209 Fed. 380, 230 Fed. 191; Greene v. Louisville & Interurban R. Co. 244 U. S. 499, 61 L. ed. 1280, 37 Sup. Ct. Rep. 673; Louisville & N. R. Co. v. Greene, 244 U. S. 522, 61 L. ed. 1291, 37 Sup. Ct. Rep. 683; Illinois C. R. Co. v. Greene, 244 U. S. 555, 61 L. ed. 1309, 37 Sup. Ct. Rep. 697.

The omissions or defects in the proceedings in the case at bar related to and affected acts the performance of which the legislature might dispense with if it so desired. The legislature could unquestionably have authorized the improvement to be constructed upon proceedings such as those which were actually had by and before the city authorities of Lisbon. I do not believe that under these circumstances the court in any event should order any proceedings whatever, except a reassessment. Can it be contended that the legislature intended to commit to future city councils the power and authority to determine whether a local improvement for an authorized purpose fully constructed and in actual use was necessary? It seems to me too clear for argument that the legislature intended that when a local improvement for an authorized purpose had been fully constructed, a property owner should be required to pay his proportionate share of the cost of the improvement, not exceeding, however, the amount in which his property had been benefited.

The majority opinion also holds that the special assessment commission arbitrarily assessed the different tracts without personal inspection. I do not believe that the record justifies this conclusion. The only evidence with respect to the proceeding had before the assessment commission is the testimony of Norton, one of the members of the commission.

Upon questions propounded to him by plaintiff's counsel, Norton testified in part:

Q. Mr. Norton, you are a resident of the city of Lisbon?

A. Yes, sir.

Q. And you have resided here for how many years?

A. Oh, about thirty years, anyway.

Q. Were you on the 28th day of May, and prior thereto, one of the special assessment commissioners of the city?

A. Yes, sir.

Q. And one of the commissioners who filed the report of the special assessment of the city for the expense of a water tower?

A. Standpipe, yes.

Q. What did you do, Mr. Norton, in ascertaining the location and valuation of the property that you assessed?

A. For the location we took as a basis, we took a map of the water district, covering the water district.

Q. You did, as a matter of fact, spend some time in looking at the lots, didn't you?

A. Well, we spent some time, yes.

Q. About how much time?

A. I am not certain; one or two hours.

Q. You took an automobile and went from one part of the city to another, and never got out of the automobile to look at any of the property?

A. I couldn't say as to that; some of us may have gotten out; we didn't all at any one time.

Q. Did you get out and look at any of the property?

A. I couldn't tell you now.

Q. To arrive at the amount necessary to be raised, you first ascertained the amount of the cost of the standpipe, did you not?

A. We had that furnished to us by the city auditor, certified to by the city auditor what the cost was.

Q. Then you took that amount, Mr. Norton, and divided it by the number of lots that you took to levy an assessment on, to ascertain how much each lot should bear?

A. Yes, the number of lots in that district.

Q. And this result was accomplished without any particular refer-

ence to the benefit to any or either of the lots would receive from the erection of such standpipe.

*A. That is what we did take into consideration, the benefit.*

Q. How did you arrive at the benefit?

A. By assessing the number of lots in that district equally. . . .

Q. I understand from your answer, that you did not assess all the lots in the city of Lisbon?

A. No, sir.

Q. What lots did you exclude from that assessment, you needn't give the particular lots, but generally?

A. My recollection is that we used as a basis, as a benefit, lots that were within 1,200 feet of a hydrant.

Q. Why 1,200 feet instead of from 800 to 1,000 feet?

A. We understood the city would provide hose to cover 1,200 feet.

Q. So that you were fixing the lots that should be assessed, according to the number of feet of hose the city would furnish?

A. Yes, that the hose would.

Q. The result was that several hundred lots, or their equivalent, were excluded from the assessment?

A. Yes, they were outside of the limit, nearly so, probably not exactly, but that was the way we figured.

Q. In assessing this benefit, you didn't take into consideration whether the lots were improved or unimproved?

A. No, sir.

According to the state census of 1915, Lisbon then had a population of 1,553. Men, like Norton, who had lived there for a long time, were probably familiar with every tract of land in the city. An inspection would convey to them no information which they did not already possess. When these facts are taken into consideration, it seems to me that no one can say either as a matter of law or fact that the members of the assessment commission did not sufficiently inspect the different tracts of land before making the assessment.

While it is true the assessment commission assessed an equal amount against every lot benefited, it does not necessarily follow that their determination was clearly and unquestionably wrong.

The statute, it is true, requires special assessments to be levied in pro-

portion to, and in no case in excess of, the benefits conferred. The statute, however, contains no direction as to how such benefits shall be measured, but this as well as other matters connected with the determination of the amount of benefits is left to the judgment and discretion of the assessment commission. The special assessment commission is a quasi judicial body and its judgments are final unless fraud or some other ground justifying equitable interference is shown to exist. Ellison v. La Moure, 30 N. D. 43, 151 N. W. 988. And while this court has held that the judgment of the special assessment commission is not conclusive, and will be set aside by the court where it appears that the commission, as a matter of fact, has exercised no judgment or discretion at all, but merely assessed the cost of construction on an area basis (Robertson Lumber Co. v. Grand Forks, 27 N. D. 556, 147 N. W. 249), this court has recognized the generally prevailing rule that under a statute like ours an assessment according to area or frontage is not necessarily invalid provided that, after inspection, the commission finds the increased value or benefit to the different lots to be in proportion to such area or frontage. Robertson Lumber Co. v. Grand Forks, 27 N. D. 556, 566, 147 N. W. 249. It should be remembered that the water mains in the city of Lisbon had been constructed long prior to the construction of the standpipe. The standpipe was constructed because the then existing water supply was deemed inadequate in case of fire. The testimony of Norton shows that the assessment commission, in assessing benefits, took into consideration and assessed only those tracts which would actually receive fire protection, by reason of the standpipe, from the water mains already laid and hydrants formerly established.

There is no evidence whatever to show that any of the lots assessed received any particular, immediate, or permanent benefit not received by other lots.

The evidence shows that the plaintiff is the owner of two lots. It appears from the facts stipulated that plaintiff had a dwelling house in Lisbon, and it is a reasonable inference from the entire record that this dwelling was situated upon the two lots. The special assessment commission found that each of these two lots had been benefited in the sum of $15, and levied an assessment of $7 against each lot. There is no evidence to show that this is incorrect, nor is there any evidence

tending to show that the assessment against plaintiff's property is excessive or unjust. Nor is there any showing that the plaintiff has been prejudiced by reason of the action of the assessment commission or by reason of any of the defects in the proceedings. So far as the record shows, it is just as likely that the amount assessed against plaintiff's property is too low. Under these circumstances, how can plaintiff be heard to complain? It is a general rule that the equitable remedy of injunction is available only where the legal remedies are inadequate. Pom. Eq. Jur. §§ 221, 1346. And a person who seeks to enjoin the collection of a tax is ordinarily required to show that he will suffer irreparable injury unless injunctive relief is granted. High, Inj. § 491. The plain and unmistakable legislative intent as expressed in § 3714, Comp. Laws 1913, is that a court should interfere only in case a plaintiff shows *"that by reason of error or omission substantial injury has been done"* to him. In this case there is absolutely no showing of injury to the plaintiff.

The majority opinion also holds that plaintiff may maintain the action not only for himself, but for all other property owners affected by the assessment.

The opinion in effect holds that this action and the judgment therein inures to the benefit of any property owner who chooses to come in and make claim thereunder.

I do not care to discuss the matter further than to say that the quotation from Pomeroy's Equity Jurisprudence, principally relied upon by the majority, is from that portion of this work devoted to a discussion of the doctrine that equity jurisdiction exists in order to prevent a multiplicity of suits. It is well to remember that the doctrine is equitable, and should be invoked in aid of, and not to defeat, equity.

I fail to see any reason for its application in the case at bar. In this case plaintiff's testimony shows that he brings the suit for himself alone. No other property owner has in any manner interested himself in the matter; nor has any other property owner brought a similar action. The time within which such action may be brought has elapsed, and the rights of any other property owner to maintain an independent suit is barred by the Statute of Limitations. Comp. Laws 1913, § 3715. So far as the record before us shows, all the other property owners have paid those portions of their assessments which have already fallen due.

And now under the holding of the majority an assessment for $10,-225, made and confirmed by the proper authorities for the payment of a local improvement fully constructed and in actual use, must be set aside because a property owner against whose property an aggregate tax of $14, payable in annual instalments covering a period of years, has been levied, is dissatisfied. And the city authorities must not only make a reassessment, but go through the form and ceremony of passing resolutions whose functions are peculiarly preliminary to the construction of an improvement. The cost and expense incident to the publication of the resolutions and notices will probably amount to at least twenty times the amount assessed against plaintiff's property.

In my opinion the judgment should be affirmed. And in any event the inquiry in this suit should be limited to whether the assessment against plaintiff's property is unjust or excessive, and, if so, the court should determine the proper amount of such assessment, and thereby put an end to this litigation.